**Catherine MACKEY et al.,
Plaintiffs-Appellants,**

v.

**Wayne STANTON et al.,
Defendants-Appellees.**

No. 78–1513.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 27, 1978.

Decided Nov. 8, 1978.

Rosalie B. Levinson, Valparaiso School of Law, Valparaiso, Ind., for plaintiffs-appellants.

Terry G. Duga, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before TONE, Circuit Judge, WISDOM, Senior Circuit Judge,* and BAUER, Circuit Judge.

TONE, Circuit Judge.

The principal issue before us is whether the Eleventh Amendment bars certain claims of recipients of Aid to Families with Dependent Children against a county welfare department. We are thus required to apply *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Plaintiffs brought this action under 42 U.S.C. § 1983 on behalf of themselves and all Elkhart County welfare recipients entitled to court-ordered child support payments who did not receive those payments because of the Elkhart County Department of Public Welfare's practice of retaining those payments as reimbursements for amounts already paid to the welfare recipients as AFDC under 42 U.S.C. §§ 601–609.[1]

■ Plaintiffs assert that the department's practice violated the Equal Protection Clause of the Fourteenth Amendment and the directives of the Department of Health, Education and Welfare's Handbook of Public Assistance, Part IV § 3124 (1966). We find it unnecessary to evaluate plaintiffs' equal protection argument because the defendants' policy is in violation of the handbook, which has the status of an HEW regulation, *Worrell v. Sterrett* [1968–1971 Transfer Binder], Pov.L.Rep. (CCH) ¶ 10,-575 (N.D.Ind.1969); *cf. King v. Smith,* 392 U.S. 309, 318 n.14, 319 n.16, 331 n.31, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), and thus the force and effect of law. The relevant part of § 3124 reads as follows:

* The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. To explain this practice, we must describe the manner in which the state calculates the needs of, and payments to, welfare families. According to Ind.Code Ann. § 12–1–7–5 through 12–1–7–7 (Burns), application for assistance is made to the county department, which investigates and then determines whether a child is eligible, and what amount he will receive. Plaintiffs describe the process for determining the amount awarded as follows: The "basic needs" and "actual shelter needs" for each family are determined and then added together to arrive at the family's "total needs." The total needs figure is multiplied by a "percentage reduction factor" to obtain the family's "adjusted total needs." *See* 45 C.F.R. § 233.20(a)(2)(ii) and (a)(3)(viii). The maximum AFDC grants available to the plaintiffs were always less than their adjusted total needs. The difference between adjusted total needs and the actual amount of the AFDC grants is called the "unmet needs." To reduce unmet needs, AFDC recipients are allowed to receive outside income without a reduction in their AFDC benefits until the total of the AFDC benefits and the outside income equals the adjusted total needs figure.

The challenged practice of the Elkhart County Department of Public Welfare was to pay the court-ordered support payments in their entirety to a county fund as reimbursement to the county for moneys expended as welfare payments. (No explanation was offered by either side as to how these reimbursement funds affected reimbursement claims made to the state department of public welfare pursuant to Ind.Code Ann. § 12–1–7–12 (Burns).) As a result, the families never received the support payments or any part thereof, even though they had unmet needs.

Some States, because of . . . percentage reductions . . . make payments that do not meet need in full according to agency standards, but under the plan allow income of the recipient to be applied to make up the difference between the amount of assistance determined to be needed and the payment. Where this method (i. e., payment to the agency) is used the support payment received by the agency must be made available to the family to the extent of the difference between determined need and payment. The part of the support payment that exceeds such difference must be treated as a refund.

Plaintiffs originally sought both damages and declaratory and injunctive relief against the continued enforcement of this policy. Both sides agree that subsequent to the filing of this action the passage of Title IV–A of the Social Security Act, 42 U.S.C. § 602(a)(28) (1974), and its implementation by Ind.Code Ann. §§ 12–1–6–1, et seq. (Burns), have rendered the injunctive and declaratory relief unnecessary. Only the claim for damages remains.

The trial court granted the defendants' motion for summary judgment, holding that the claims for equitable and declaratory relief were mooted by the subsequent passage of Title IV–A of the Social Security Act, and that the plaintiffs failed to state a claim upon which relief can be granted because they were not harmed by the defendants' acts and therefore were not entitled to damages. The court also denied certification of the class because the named plaintiffs had suffered no harm and therefore were not representative of the purported class. Only damages and the propriety of a class action remain at issue. We conclude that defendants have failed to show the damages are not recoverable and therefore reverse the judgment. We also direct reconsideration of the class issue.

## I.

### A.

Before reaching the Eleventh Amendment issue we must consider whether plaintiffs' claims for money damages should otherwise survive the defendants' motion for summary judgment.

It appears from the summary judgment papers that, contrary to the District Court's view, the plaintiffs have suffered harm. Plaintiffs had unmet needs (see note 1, supra) in the same periods that the county department received and kept support payments made on their behalf. Section 3124 of the HEW Handbook explicitly commands that "the support payment received by the agency must be made available to the family to the extent of the difference between determined need and payment [i. e., unmet needs]." The inescapable conclusion is that because of the department's policy, plaintiffs did not receive as much total income as they would have if the department had complied with federal regulations. Had those regulations been followed, plaintiffs would have received their AFDC and additional benefits.[2]

### B.

We also disagree with the District Court's conclusion that "[i]n accepting and using the child support payments of Plaintiffs . . . the Elkhart County Department of Public Welfare acted in accordance with the terms of the court orders." The orders require that payment be made "to the Elkhart Co. Dept. of Public Welfare to partially reimburse said Department for expenses in connection with and maintenance of said child." Admittedly, this order is subject to more than one interpretation. Partial reimbursement may refer to the entire amount of each support payment or to only

---

**2.** The defendants argue that "other elements of welfare law," such as clothing allowances and food stamps, reduce the amount of unmet needs but plaintiffs failed to take these factors into account in their calculations of harm. The trial court made no specific findings concerning the effects of these other elements. Given the present state of the record, we too are unclear as to the import of these factors. Defendants' point only serves to illustrate the need for a trial on the merits.

so much of each payment as exceeds the family's unmet needs.

■■■ We adopt the latter interpretation. When confronted with a court order subject to two possible interpretations, one in compliance with applicable federal regulations, the other in violation of those regulations, we must presume that the court intended its order to comply with the controlling law.[3]

We therefore conclude that plaintiffs are entitled to a trial on their claims for damages unless those claims are barred by the Eleventh Amendment.

## II.

The claims which *Edelman v. Jordan, supra,* 415 U.S. at 651, 94 S.Ct. 1347, held barred by the Eleventh Amendment were against the Director of the Illinois Department of Public Aid, a state agency, and could be satisfied only from the general revenues of the state. *See Vargas v. Trainor,* 508 F.2d 485, 491 (7th Cir. 1974), *cert. denied,* 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975). In the instant case the claims are asserted against the county department and its officials and can be satisfied from moneys raised by that department through the exercise of its taxing and borrowing powers. The question we must decide is whether *Edelman* is applicable on these facts.

■■■ As a general rule, Eleventh Amendment immunity does not extend to counties and other local units of government. *See, e. g., Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). In *Mt. Healthy City School District v. Doyle, supra,* 429 U.S. at 274, 97 S.Ct. 568, the Court held that a local school board was not entitled to immunity under the Eleventh Amendment. Here, as in *Mt.*

*Healthy,* the resolution of the immunity issue "depends, at least in part, upon the nature of the entity created by state law." 429 U.S. at 280, 97 S.Ct. at 572. Thus, a comparison of the Indiana statutes concerning the Elkhart County Department of Public Welfare and the Ohio statutes concerning the Mt. Healthy City School District is necessary.

In *Mt. Healthy,* the Supreme Court reviewed Ohio statutes which subjected local school boards to the supervision of the state board of education, directed payment of a "significant amount" of state funds to the local boards, and authorized the local boards to issue bonds and levy taxes. After weighing the broad state controls and extensive state funding against the power to issue bonds and levy taxes, the Court held,

> On balance, the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State.

429 U.S. at 280, 97 S.Ct. at 572. Although the Court did not express its reasons for reaching this result, it is inferable, especially in light of *Edelman*'s emphasis on the fact that in that case the judgment could be satisfied only from the general revenues of the state, that the Court was impressed with the statutory power of the local school district to raise its own funds when the need arose. The Court may have found Ohio Rev.Code Ann. § 133.27 (Page) particularly significant, because that statute authorizes the school district to collect money to pay judgments against it, indicating that the state treasury would not have to pay such judgments.

We now turn to the relevant Indiana statutes. The county department is subject to state supervision, Ind.Code Ann. § 12–1–3–3 (Burns), and is reimbursed by the state for aid moneys expended, Ind.Code Ann.

---

3. Indiana law provides further support for the view that the state court's order contemplated that only those portions of support payments that exceeded unmet needs would be used to reimburse the department. Ind.Code Ann. § 31‑4‑1‑21 (Burns) requires that support payments ordered paid to the county department be placed in a fund in the county treasury called the County Welfare Trust Fund, to "be disbursed only for the benefit of the mother and child." Under this statute, the county department could retain only those amounts in excess of unmet needs as reimbursement. Thus, the interpretation of the court order relied upon by the county department was incompatible with state as well as federal law.

§ 12–1–7–12 (Burns). But each county must maintain a welfare fund within the county treasury, raised by a separate county tax levy. Ind.Code Ann. § 12–1–11–1 (Burns). Subject to some state regulation, the county department compiles and adopts its own budget and plans and executes the necessary tax levy. Ind.Code Ann. §§ 12–1–11–2 and 12–1–11–3 (Burns). The county department is authorized to issue bonds in certain circumstances. Ind.Code Ann. §§ 12–1–11–5 through 12–1–11–11 (Burns). Ind.Code Ann. § 12–1–11–13 (Burns) authorizes the issuance of bonds for the purpose of funding indebtedness evidenced by judgments rendered against the county.

In all respects that the Supreme Court seemed to consider significant in *Mt. Healthy,* the county department here is similar to the school board in that case. Although both are subject to state supervision and depend heavily on state funds, they perform their duties on a local level. More important, both have the power to raise their own funds by tax levy and by bond issuance. Significantly, Ind.Code Ann. § 12–1–11–13 (Burns) is analogous to Ohio Rev.Code Ann. § 133.27 (Page), providing a manner for payment of judgments without resort to the state treasury.

The defendants also argue that payment of any judgments will be made from the state's general revenues, because the Indiana Department of Public Welfare reimburses the county department for amounts expended as AFDC, Ind.Code Ann. § 12–1–7–12 (Burns). We are not persuaded, however, that the state's general revenues would have to be used to pay the judgments. The statute provides for reimbursement for amounts paid out as AFDC, but does not provide for reimbursement for amounts disbursed to mothers and children out of the fund containing support payments made to the county department rather than to the families. Any judgments would be for support payment funds unlawfully withheld from plaintiffs and not AFDC benefits. That an indirect effect of the judgment might be to increase the amount of the state's subsidy to its political subdivision was not controlling in Mt. Healthy and should not control here.

We hold that the *Mt. Healthy* decision governs this case and that therefore the Eleventh Amendment does not bar a money judgment against defendants. The action is therefore not moot.

### III.

█ Defendants also argue that the plaintiffs should not be permitted to prosecute this § 1983 claim because they failed to exhaust their state remedies. The Supreme Court answered this contention in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961): "The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." 365 U.S. at 183, 81 S.Ct. at 482. This remains the law, as the Supreme Court has recently stated. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 609, n.21, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). *Cf. Zablocki v. Redhail,* 434 U.S. 374, 380 n.5, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978).

Defendants' reliance on *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), is misplaced. The principles of federalism and the accompanying notions of comity applied in *Huffman* are relevant when the federal court is asked to issue injunctive or declaratory relief which would have the effect of interfering with or foreclosing state court proceedings or inappropriately reviewing the decision of a state court. In this case, however, plaintiffs do not seek relief of that nature but seek only damages resulting from violation of their federal rights. No interference with the state judicial process is involved.

█ Because plaintiffs had no quarrel with the state court's orders if interpreted as consonant with federal law, an appeal from those orders would have served no purpose. Any remedies plaintiffs may have failed to exhaust were therefore internal county department administrative remedies, which the record indicates may not have existed at all and which in any event would appear to have been futile in view of

**1132**

the position taken by the defendants in this action.[4]

The judgment in this case must therefore be reversed and remanded for further proceedings. On remand, the District Court should reconsider its original determination of the class question, which appears to have been inextricably wound up with the court's view on the merits. In making this determination the court will of course give due weight to the existence of the important common questions of law decided by this opinion.

REVERSED AND REMANDED.

---

**4.** Defendant's argument that this action is not justiciable in federal court because it concerns a "domestic matter" solely within the purview of state law and courts is utterly without merit. Plaintiffs sue under a federal statute, § 1983, to recover for harm suffered as a result of violation of their federal rights. Characterization of

the underlying regulated matter as "domestic" does not alter the federal nature of this claim.