v.

STATE of Indiana, Marion County Department of Public Welfare, Marion County Probation Department, Indianapolis Public Schools, Brian Toepp, Individually and in his Official Capacity as Probation Officer, Edward Bramblett, Marguerite Bramblett, Elaine Bramblett, Kathy Reiche, Jack Reiche, Herbert Grosby, Theora Haydock, and Robert Haydock, Appellees–Defendants.

No. 32A01–9212–CV–415.

Court of Appeals of Indiana, Fifth District.

May 15, 1995.

 ⚷⇝271

⚷⇝207(1)

Linda George, Steve Laudig, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Jon Laramore, Deputy Atty. Gen., Indianapolis, for appellees State of Ind. and Marion County Dept. of Public Welfare.

Andrew P. Wirick, Chief Counsel, Litigation Office of Corp. Counsel, for appellees Marion County Probation Dept. and Brian Toepp.

Stewart & Irwin, Indianapolis, for amicus curiae Loretta Roberts.

Plews & Shadley, Indianapolis, for amicus curiae Gordon Chastain.

## OPINION

RUCKER, Judge.

Plaintiff–Appellant J.A.W. sued the State of Indiana (the State), the Marion County Department of Public Welfare (DPW), the Marion County Probation Department (Probation) and Marion County Probation Officer Brian Toepp (referred to collectively as Defendants). He asserted various tort theories of recovery as well as various civil rights violations under the provisions of 42 U.S.C. § 1983. The Defendants moved for summary judgment which the trial court granted. J.A.W. filed this interlocutory appeal raising six issues for our review which we consolidate and rephrase as follows:

1) Whether the trial court erred in granting summary judgment for the Defendants on J.A.W.'s civil rights claims.

2) Whether the trial court erred in granting summary judgment for the Defendants on J.A.W.'s tort claims.

3) Whether the trial court erred in refusing to allow J.A.W. to amend his complaint for the purpose of adding additional claims and parties.

## FACTS

The present action is a companion proceeding to the one decided last year by this court in *J.A.W. v. Roberts* (1994), Ind.App., 627 N.E.2d 802. There, as in the instant case, the facts giving rise to the claims relate to the physical and sexual abuse suffered by J.A.W. at the hands of his foster father, Edward Bramblett. In the present action, the claims are asserted against, among others, various governmental entities which allegedly failed to protect J.A.W. from abuse.

In 1978 J.A.W., then eight years old and facing charges of juvenile delinquency, was removed from the home of his paternal grandmother and made a ward of the Marion County Juvenile Court. By order of November 8, 1978, the court placed J.A.W. in the foster care and custody of Edward and Marguerite Bramblett. While in the Bramblett home, J.A.W. was subjected to repeated instances of sexual abuse by Edward Bramblett and by several of Bramblett's male friends. Although J.A.W. was under the supervision of probation officers and his foster placement was being monitored by social workers the abuse apparently remained undetected until 1989 when J.A.W. left the Bramblett home and reported the abuse to authorities.

In the summer of 1989, the Marion County Prosecutor initiated criminal proceedings against Bramblett and the other men involved in the molestations. On December 12, 1989, Bramblett pled guilty and was convicted on molestation charges. That same day, J.A.W. mailed a letter and draft complaint to DPW detailing claims he intended to file against that agency. Thereafter, on February 27, 1990, J.A.W. filed a complaint in the Marion Superior Court naming the parties to this action as defendants.[1] The complaint consisted of forty-four pages and thirteen counts alleging various theories in tort and claiming violation of J.A.W.'s civil rights pursuant to 42 U.S.C. § 1983. The matter was subsequently venued to Hendricks County. J.A.W. amended the complaint on August 17, 1990, pursuant to an order by the trial court to provide a more definite statement of his claims.

On September 5, 1990, the State moved to dismiss the complaint based on J.A.W.'s alleged failure to comply with the notice provisions of the Indiana Tort Claims Act and because the State is not a "person" subject to suit under § 1983. The trial court granted the State's motion on April 4, 1991. In so doing the court considered matters outside the pleadings thus converting the motion to one for summary judgment. *See* Ind.Trial Rule 12(B)(8).

On November 15, 1991, DPW, Probation and Toepp each filed motions for summary judgment on the same grounds alleged by the State. In addition, Toepp's motion alleged that he was entitled to absolute judicial immunity from suit or in the alternative that he was entitled to qualified immunity and immunity under the provisions of the Indiana Tort Claims Act. After conducting a hearing the trial court ordered J.A.W. to amend his complaint by November 6, 1992 in order to clarify his § 1983 claims.

On November 6, 1992, J.A.W. filed his Second Amended Complaint consisting of seventy-three pages and twenty-three counts in which he elaborated upon his § 1983 claims and in addition added a number of new claims and named nine additional parties as defendants.

On November 20, 1992, the trial court entered an order in which it granted summary judgment in favor of DPW, Probation and Toepp on the tort theories and the § 1983 claims alleged in J.A.W.'s complaint. The court's order also found that J.A.W. added additional parties to the complaint without the court's permission and dismissed those

---

1. Defendants Indianapolis Public Schools, Jack Reiche, Kathy Reiche, and Herbert Grosby were dismissed from this action prior to the present appeal. During the pendency of the appeal defendant Elaine Bramblett also was dismissed from the action. The record is unclear as to the status of defendants Edward Bramblett, Marguerite Bramblett, Theora Haydock, and Robert Haydock none of whom are active parties to this appeal.

parties from the case. Upon petition by J.A.W. the trial court certified its April 4, 1991 and November 20, 1992 orders for interlocutory appeal, and this appeal ensued in due course.

## STANDARD OF REVIEW

When reviewing the propriety of a ruling on a motion for summary judgment, this court applies the same standard applicable to the trial court. *Liberty Mut. Ins. Co. v. Metzler* (1992), Ind.App., 586 N.E.2d 897, *trans. denied.* We must consider the pleading and evidence sanctioned by Indiana Trial Rule 56(C) without deciding their weight or credibility. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Houin v. Burger* (1992), Ind.App., 590 N.E.2d 593, *trans. denied.* The movant bears the burden of proving the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed favorably to the non-movant. *Id.*

## I. SECTION 1983 CLAIMS

Section 1983 provides a civil remedy against any "person" who, under color of state law, subjects a citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the federal Constitution or federal laws. 42 U.S.C. § 1983; *Bayh v. Sonnenburg* (1991), Ind., 573 N.E.2d 398, *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992). Section 1983 does not provide a remedy against states, state entities or state officials sued in their official capacities. These parties are not considered "persons" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45, 58 (1989). However, municipalities and other local government entities and officials are considered "persons" and are included among those parties subject to suit under § 1983. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611, 635 (1978). In determining whether an entity is state or local for purposes of § 1983, we consider whether the entity is one which is entitled to Eleventh Amendment immunity from suit in federal court. *Board of Trustees v. Landry* (1994), Ind.App., 638 N.E.2d 1261. Eleventh Amendment immunity extends to states and their agencies but does not extend to counties and other local units of government. *Mascheroni v. Board of Regents*, 28 F.3d 1554, 1559 (10th Cir.1994); *Gary A. v. New Trier High School Dist. No. 203*, 796 F.2d 940, 945 (7th Cir.1986). An entity which is an arm of the state for purposes of Eleventh Amendment immunity is not a "person" within the meaning of § 1983. *Howlett v. Rose*, 496 U.S. 356, 365, 110 S.Ct. 2430, 2437, 110 L.Ed.2d 332 (1990).

There is no generally accepted test for determining whether an entity is an arm of the state entitled to Eleventh Amendment immunity or a branch of local government to which the immunity does not extend. *Ranyard v. Board of Regents*, 708 F.2d 1235, 1238 (7th Cir.1983). Rather, a review of the cases discussing the issue reveals that a variety of factors have been considered. For instance, in *Kovats v. Rutgers, the State Univ.*, 822 F.2d 1303, 1307 (3rd Cir.1987) quoting *Urbano v. Board of Managers*, 415 F.2d 247, 250–51 (3rd Cir.1969), *cert. denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970), the court observed that "[l]ocal law and decisions defining the status and nature of the agency" is a relevant factor but only one of a number that are of significance. "Among the other factors, no one of which is conclusive, perhaps the most important is whether ... payment of the judgment will have to be made out of the state treasury." *Id.* In *Kashani v. Purdue University*, 813 F.2d 843, 845 (7th Cir.1987), *cert. denied*, 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97, the court considered, *inter alia*, the extent of state funding of the entity, the state's oversight and control of the entity's fiscal affairs, and the entity's ability independently to raise funds. Other factors which bear upon the determination include the definition of "state" and "political subdivision," the degree of state control over the entity, and the fiscal autonomy of the entity. *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir.1985), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 462. Some cases have placed particular emphasis on the entity's ability to raise its own funds by tax levy and by bond issuance because that ability indicates a lack of

fiscal dependence upon the state. *Kashani*, 813 F.2d at 846; *Mackey v. Stanton*, 586 F.2d 1126, 1131 (7th Cir.1978), *cert. denied*, 444 U.S. 882, 100 S.Ct. 172, 62 L.Ed.2d 112 (1979). Also of significance are whether the entity at issue can sue and be sued and enter into contracts and whether it serves the state as a whole or only a local region. *Board of Trustees v. Landry* (1994), Ind.App., 638 N.E.2d 1261, 1265. Despite the application of differing sets of criteria, each of the foregoing decisions recognizes that the determination of an entity's status ultimately depends on the extent of its autonomy, particularly its financial autonomy, from the state.

In a leading case addressing the status of an entity for purposes of Eleventh Amendment immunity, the United States Supreme Court reviewed statutory provisions regarding an Ohio school board in order to determine the "nature of the entity created by state law." *Mount Healthy City School Dist. v. Doyle*, 429 U.S. 274, 279, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). Under Ohio law, local school districts were excluded from the definition of "state." The school board was only one of many within the state, and the board had extensive powers to issue bonds and levy taxes. After considering these factors along with the fact that the board was subject to guidance from the state Board of Education and that the board received a significant amount of money from the state, the court concluded: "On balance, the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State." *Id.* at 280, 97 S.Ct. at 573.

J.A.W. acknowledges that the State is not a "person" under § 1983 and thus he may not maintain a claim against it on that theory. Accordingly J.A.W. does not challenge the trial court's grant of summary judgment in favor of the State on his § 1983 claim. J.A.W. contends however that the trial court erred in granting summary judgment in favor of DPW, Probation, and Toepp. According to J.A.W. each of these defendants is an arm of the county, is a "person" within the

meaning of 42 U.S.C. § 1983, and is amenable to suit thereunder.

## MARION COUNTY DEPARTMENT OF PUBLIC WELFARE

DPW is an agency established by Ind.Code § 12–19–1–1 and commissioned to "[a]dminister the welfare activities within the county." I.C. § 12–19–1–7(a)(1). Those activities include administering public assistance programs for children, the elderly, and the handicapped, licensing of foster homes, and supervision of the care and treatment of children in foster homes. I.C. § 12–19–1–10.

DPW is subject to supervision by the State Department of Public Welfare (State Department).[2] I.C. § 12–13–5–1. The State Department appoints DPW's director who in turn may appoint assistants from lists established by the state personnel department. I.C. § 12–19–1–2; I.C. § 12–19–1–7(a). The appointment of assistants is subject to approval by the State Department, I.C. § 12–19–1–7(a), and the assistants' salaries along with that of DPW's director are set by the State Department. I.C. § 12–19–1–7(b); I.C. § 12–19–1–4.

The aid programs administered by DPW are funded primarily from federal sources with some contribution from the state. *See e.g.*, I.C. §§ 12–19–6–1 to –5 (reimbursement to county from federal and state funds for expenditures on AFDC, etc.); I.C. §§ 12–14–9.5–4 to –6 (reimbursement to state by county of forty percent of non-federal share of funds expended for AFDC). However, in addition to that funding, DPW relies heavily upon the county for monies needed to defray certain welfare costs. Indiana Code §§ 12–19–3–2 and –3 require that a County Welfare Fund be maintained within the county treasury for "expenses and obligations incurred by [DPW] in the payment of AFDC and child welfare services." Monies for the fund are raised by a separate tax levy imposed by the county fiscal body on all taxable property in the county. I.C. § 12–19–3–2. If the amounts in the County Welfare Fund prove insufficient to meet DPW's financial obli-

---

**2.** Pursuant to P.L. 2–1992, § 7 the State Department of Public Welfare has been renamed the Division of Family and Children. Also, each County Department of Public Welfare has been renamed "County Office of Family and Children." P.L. 5–1993, § 170.

gations, the county must replenish the fund by making additional appropriations from the County General Fund or by short or long term borrowing. I.C. § 12–19–3–9; I.C. §§ 12–19–5–1 to –11; I.C. §§ 12–19–3–12 to –13. The county also may issue its serial bonds to cover indebtedness "for the use of the county welfare fund" where the indebtedness is evidenced by judgments or other obligations rendered against the county. I.C. § 12–19–3–28. Although the State Department is required to pay the costs of facilities, supplies and equipment needed by DPW, I.C. § 12–19–1–9, the county reimburses the state for those expenditures by means of an additional tax levy on property located within the county. I.C. §§ 12–19–4–2 and –5.

DPW compiles and adopts its own budget and recommends the tax levy necessary to fund the budget. I.C. § 12–19–3–3; I.C. § 12–19–3–4(a). The budget is then submitted to the State Department for review and approval. I.C. § 12–19–3–4(b). DPW has the power to sue and be sued in its own name. I.C. § 12–19–1–13. It operates only within Marion County and is but one of many county departments of public welfare in the state. I.C. § 12–19–1–1.

■ A review of the foregoing provisions reveals that although the state maintains some control over DPW's operations and provides a portion of its funding, DPW nevertheless has sufficient indicia of independence to be considered distinct from the state. DPW was created as an entity separate from its state overseer, the State Department of Public Welfare, and DPW is alone charged with providing welfare services on the county level. DPW is also a separate entity for purposes of litigation as evidenced by its authority to sue and be sued in its own name. Because DPW's budget along with any deficit therein is funded by county revenues the county, not the state, is responsible for ensuring the success of DPW's day-to-day operations. DPW ultimately relies on the county, not the state, for the facilities to house its operations and for the provision of necessary supplies and equipment. Although this demonstrates influence over DPW by the county it is the influence of the state, not that of the county, that is important for Eleventh Amendment purposes. *Bolden v. Southeastern Pa. Transp. Authority,* 953 F.2d 807, 820 (3rd Cir.1991). Also, DPW's authority to compile and adopt its own budget, although subject to state approval, reflects a measure of discretion on the part of DPW to determine the quantity of services it may provide for the county. DPW's ability to so function independently of the state indicates that on balance DPW, like the school board in *Mount Healthy,* is more like an arm of the county than it is like an arm of the state.[3]

■ DPW nevertheless argues that it should be considered an arm of the state because any judgment against DPW will be paid from the state treasury. It is true that whether a judgment against an entity will be paid from public funds in the State treasury is an important consideration in determining the entity's status for purposes of Eleventh Amendment immunity. *Board of Trustees v. Landry* (1994), Ind.App., 638 N.E.2d 1261, 1264 citing *Benning v. Board of Regents,* 928 F.2d 775, 777 (7th Cir.1991), *reh'g denied,* and *Kashani v. Purdue Univ.,* 813 F.2d 843, 845 (7th Cir.1987), *cert. denied,* 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97; *Ranyard v. Board of Regents,* 708 F.2d 1235, 1238 (7th Cir.1983) (whether judgment will be paid by state is "critical inquiry" in Eleventh Amendment analysis). However, this factor alone is not dispositive in every case. *Jensen v. State Bd. of Tax Comm'rs,* 763 F.2d 272, 277 (7th Cir.1985); *Adden v. Middlebrooks,* 688 F.2d 1147, 1153 (7th Cir.1982); *Blake v. Kline,* 612 F.2d 718, 724 (3rd Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980). Rather, it is only meaningful in light of the agency's other attributes. *Blake,* 612 F.2d at 724; *see also Adden,* 688 F.2d at 1153 (where state statutes and record on appeal did not reveal whether state would be required to meet any judgment awarded, de-

3. A similar conclusion was reached by the Seventh Circuit in *Mackey v. Stanton,* 586 F.2d 1126 (7th Cir.1979), *cert. denied,* 444 U.S. 882, 100 S.Ct. 172, 62 L.Ed.2d 112 (1979) and in *Baxter v.* *Vigo County School Corp.,* 26 F.3d 728 (7th Cir. 1994) concerning the Elkhart County and Vigo County Departments of Public Welfare.

termination of entity's status was guided by other factors). In the present case it is unclear whether a judgment against DPW will be paid from the state treasury or from some other source. Our decision therefore may not rest on the outcome of this factor, and we are guided instead by additional considerations, namely those attributes of DPW demonstrating its independence from the state. Because DPW is not an arm of the state for Eleventh Amendment purposes and is rather a unit of local government, it is a "person" subject to suit under 42 U.S.C. § 1983. The trial court's ruling to the contrary is in error, and its grant of summary judgment in favor of DPW therefore must be reversed.[4]

### MARION COUNTY PROBATION DEPARTMENT

J.A.W. maintains that a similar analysis requires a finding that Probation is an arm of the county rather than a creature of state government. According to J.A.W., the Juvenile Code, I.C. §§ 31–6–1–1 to 31–6–11–21, defines Probation as an administrative entity separate from the Juvenile Court, established to perform county administrative functions. Evidence of that status according to J.A.W. are statutory provisions requiring that the county provide funding for Probation and pay the salaries of its officers.

■ However, far from defining Probation as a separate entity, the Juvenile Code and

other statutory provisions make clear that Probation is an arm of the court. Probation is comprised of a chief probation officer and such other probation officers as the court may appoint. I.C. § 31–6–9–4(a). Probation officers "serve at the pleasure of the appointing court and are directly responsible to and subject to the orders of the court." I.C. § 11–13–1–1(c); see also I.C. § 33–5–35.1–8(a). The duties of probation officers are prescribed by statute and consist solely of assisting the court and performing such tasks as the court may direct. I.C. § 33–5–35.1–8(a); I.C. § 11–13–1–3; I.C. § 31–6–9–4(b).

Moreover, the fact that Probation receives funding from the county is not indicative of county status. Indiana law has long required that county government directly finance the operation of the state trial court system. *Pruitt v. Kimbrough*, 536 F.Supp. 764, 766 (N.D.Ind.1982), aff'd 705 F.2d 462 (7th Cir. 1983); see I.C. § 31–6–9–1.[5] This includes supplemental payments to the state salaries of judges, I.C. § 33–13–12–7(c), together with the entire salaries of support court personnel, I.C. § 33–10.5–8–3; I.C. § 31–6–9–4(a). Despite this system of funding, it is without question that Indiana's circuit, superior and county courts are exclusively units of the judicial branch of the state's constitutional system and as such are not units of county government. Ind. Const. art. 3, § 1, art. 7 § 1; *Pruitt*, 536 F.Supp. at 766; *Woods v.*

---

**4.** While we acknowledge that the trial court's ruling on a motion for summary judgment may be affirmed on any theory supported by evidence of record, *Houin v. Burger by Burger* (1992), Ind.App., 590 N.E.2d 593, 596, *trans denied*, the record here is devoid of evidence concerning any alternative theory which might negate J.A.W.'s § 1983 claim. In order to prevail on a claim of civil rights violations pursuant to 42 U.S.C. § 1983 J.A.W. must not only prove that DPW is a "person" pursuant to the statute but must also establish that DPW "under color of [state law] subject[ed], or cause[d] to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *Bayh v. Sonnenburg* (1991), Ind., 573 N.E.2d 398, *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415. In its motion for summary judgment concerning the § 1983 claim, DPW presented materials in support of the theory that it is not a "person" for purposes of § 1983. DPW also submitted materials in support of the

general allegation that "[t]he record contains no relevant factual evidence supporting plaintiff's claims of liability against [DPW] wherein plaintiff was *not* a ward of the defendant and no special relationship existed." *Suppl. Record* at 290. Because DPW presented no T.R. 56(C) materials addressed to the other elements of J.A.W.'s § 1983 claim we are unable to determine whether the trial court's grant of summary judgment in DPW's favor may be affirmed on some alternative ground. *See Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411 (since the 1991 amendments to Ind.Trial Rule 56 only those portions of the record that were specifically designated to the trial court comprise the entire record for appellate review).

**5.** For a discussion of the apparent reasons for this practice see *Pruitt*, 536 F.Supp. at 766 n. 2 citing Indiana Judicial Center, *The Indiana Trial Court System*, Vol. I (1978).

*City of Michigan City,* 940 F.2d 275, 279 (7th Cir.1991); *see also State ex rel. McClure v. Marion Superior Court* (1959), 239 Ind. 472, 158 N.E.2d 264, 268–69 (circuit court judges are not county officers but are officers of judicial circuit; likewise, clerk of court, although elected in county, is not a county official). The funding of Probation by the county is thus merely reflective of the long-standing policy of funding state courts through county revenues. Because Probation is an arm of the court, it like the court itself is a state entity and therefore not a "person" under § 1983. The trial court properly granted summary judgment in favor of Probation on the § 1983 claims alleged in the complaint.

## PROBATION OFFICER BRIAN TOEPP

 J.A.W.'s complaint asserts § 1983 claims against Brian Toepp in both his official and personal capacities. As for Toepp in his official capacity, the law is clear that the suit cannot be maintained. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) quoting *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55. State officers sued for damages in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983 because they assume the identity of the government that employs them. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991). We have already determined that Probation is a state entity. Because Toepp is an agent of Probation, any suit against Toepp in his official capacity is a suit against a state entity and cannot be maintained under § 1983.

Unlike an official capacity defendant, an officer sued in his personal capacity comes to court as an individual. *Hafer,* 502 U.S. at 25, 112 S.Ct. at 362. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person." *Id.* To the extent J.A.W.'s complaint seeks liability against Toepp in his personal capacity, the claim may properly be pursued under § 1983. This is so even if the actions giving rise to the personal capacity claim were within the scope of Toepp's official duties. *See id.* at 21, 112 S.Ct. at 360.

Toepp counters that although generally a personal capacity claim may be pursued under § 1983, no such claim may be asserted against him because his role in the placement and supervision of J.A.W. with the Brambletts was performed solely in an effort to enforce the trial court's order. Thus, according to Toepp, he was acting as an arm of the court and is entitled to absolute judicial immunity.

 It is well settled that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless those actions are taken in the complete absence of any jurisdiction. *Cato v. Mayes* (1979), 270 Ind. 653, 388 N.E.2d 530, 532; *Owen v. Vaughn* (1985), Ind.App., 479 N.E.2d 83, 86, *reh'g denied; Scruggs v. Moellering,* 870 F.2d 376 (7th Cir.1989), *cert. denied,* 493 U.S. 956, 110 S.Ct. 371, 107 L.Ed.2d 357 (1989). The underlying purpose of the immunity is to preserve judicial independence in the decision-making process. *Dellenbach v. Letsinger,* 889 F.2d 755 (7th Cir.1989), *cert. denied,* 494 U.S. 1085, 110 S.Ct. 1821, 108 L.Ed.2d 950 (1990). Judicial decision-making without absolute immunity would be driven by fear of litigation and personal monetary liability. *Thompson v. Duke,* 882 F.2d 1180, 1185 (7th Cir.1989), *cert. denied,* 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990). Such opportunity for intimidation and retaliation constitutes a fundamental and unacceptable threat to an independent and impartial judiciary. *Id.* The same policies which underlie the grant of absolute judicial immunity to judges justify the grant of immunity to non-judicial officers who perform quasi-judicial functions. *Id.; Ashbrook v. Hoffman,* 617 F.2d 474, 476 (7th Cir.1980). "[A] nonjudicial officer who is delegated judicial duties in aid of the court should not be a 'lightning rod for harassing litigation' aimed at the court." *Ashbrook,* 617 F.2d at 476 quoting *Kermit Const. Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir.1976). Absolute judicial immunity therefore extends to persons performing tasks so integral or inter-

twined with the judicial process that these persons are considered an arm of the judicial officer who is immune. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir.1994).

The United States Supreme Court has endorsed a functional approach in determining whether an official is entitled to judicial immunity. *Forrester v. White* (1988), 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555. Under this approach, a court looks to "the nature of the function performed, not the identity of the actor who performed it." *Id.* at 229, 108 S.Ct. at 545. Consistent with this approach, a number of courts have determined that probation officers preparing presentence reports are entitled to judicial immunity. *Freeze v. Griffith*, 849 F.2d 172 (5th Cir.1988); *Tripati v. United States Immigration and Naturalization Serv.*, 784 F.2d 345 (10th Cir.1986), *cert. denied*, 484 U.S. 1028, 108 S.Ct. 755, 98 L.Ed.2d 767 (1988); *Demoran v. Witt*, 781 F.2d 155, 157 (9th Cir.1986); *Hughes v. Chesser*, 731 F.2d 1489 (11th Cir. 1984). When preparing pre-sentence reports, probation officers act at the specific request of the court and submit the results of their investigation to the sentencing court for its evaluation. *Turner v. Barry*, 856 F.2d 1539 (D.C.Cir.1988). "Charged with the duty of impartial fact finding for the court, probation officers typically serve as an 'arm of the sentencing judge.'" *Id.* at 1540 quoting *Demoran*, 781 F.2d at 157. In addition, the act of executing or enforcing a court order has consistently been held as a function intrinsically associated with judicial proceedings. *Bush*, 38 F.3d at 847 (where court ordered that juvenile be placed in detention facility, county officer was immune from liability for errors in assessment conducted prior to placement); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir.1986) (officer who acts in reliance on facially valid court order is entitled to quasi-judicial immunity from suit under § 1983); *Coverdell v. Department of Social and Health Servs.*, 834 F.2d 758 (9th Cir.1987); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.1981).

■ In the course of delinquency proceedings against J.A.W. in November, 1978 the Marion County Juvenile Court entered an order placing J.A.W. on probation, making

him a ward of the court, and ordering him placed in the home of Edward and Marguerite Bramblett. Brian Toepp was assigned as J.A.W.'s probation officer and was charged with the duty of monitoring the placement. In the course of that duty Toepp was required to meet regularly with J.A.W., conduct investigations regarding any complaints, report the results of his investigations to the trial court, and make recommendations regarding continued placement. Each of these activities was necessary for the implementation and enforcement of the trial court's order. As such, they were acts intimately associated with a judicial proceeding and entitled Toepp to absolute immunity from suit.

■ J.A.W. nevertheless argues that Toepp should be denied immunity because he was derelict in the performance of his duties. According to J.A.W., Toepp failed to properly investigate or report allegations of abuse made by J.A.W. and failed to adequately monitor J.A.W. to ensure that he was in safekeeping. However, the law is clear that a judicial officer will not be deprived of immunity because the action he took was in error, or in excess of his authority; rather he will be subject to liability only when he has acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978), *reh'g denied*, 436 U.S. 951, 98 S.Ct. 2862, 56 L.Ed.2d 795. Likewise, a nonjudicial officer who acts in furtherance of a valid court order cannot be so deprived of immunity. *See Valdez v. City and County of Denver*, 878 F.2d 1285, 1289 (10th Cir.1989), *reh'g denied*. ("[I]t is simply unfair to spare the judges who give orders while punishing the officers who obey them."). It is undisputed that the trial court had authority to hear and determine issues in the delinquency proceedings against J.A.W. The court's order placing J.A.W. in the custody of the Brambletts, making him a ward of the court, and placing him on probation was therefore valid and binding, and Toepp's actions pursuant to the order are protected by a grant of absolute judicial immunity. Because J.A.W. may not pursue a claim against Toepp in either his official or personal capacity, the

trial court properly granted summary judgment in favor of Toepp.

## II. TORT CLAIMS

J.A.W. next contends that the trial court erred in granting summary judgment for the State, DPW, Probation, and Toepp (Defendants) on the tort theories alleged in J.A.W.'s complaint. According to J.A.W., the trial court erroneously determined that J.A.W. failed to comply with the notice provisions of the Indiana Tort Claims Act, Ind.Code § 34–4–16.5–1 to –20.

The Indiana Tort Claims Act (ITCA) applies only to a claim or suit in tort, I.C. § 34–4–16.5–1, and is intended to protect the fiscal integrity of state governmental entities by limiting their liability for tort claims resulting from actions of public employees. *Teague v. Boone* (1982), Ind.App., 442 N.E.2d 1119, 1120. Pursuant to the notice provisions of the ITCA, a claim against the state is barred unless notice of the claim is filed with the attorney general and the state agency involved within 180 days after the loss occurs. I.C. § 34–4–16.5–6. Similarly, a claim against a political subdivision is barred unless notice is filed with the governing body of the political subdivision and the Indiana political subdivision risk management commission within 180 days of the loss. I.C. § 34–4–16.5–7. The foregoing provisions also operate to bar claims against employees of the state or of political subdivisions. *Poole v. Clase* (1985), Ind., 476 N.E.2d 828, *reh'g denied; VanValkenburg v. Warner* (1992), Ind. App., 602 N.E.2d 1046, 1048, *trans. denied; Hupp v. Hill* (1991), Ind.App., 576 N.E.2d 1320, 1326.

J.A.W. forwarded a purported tort claims notice to DPW on December 12, 1989. The parties to this action spend considerable time discussing whether the notice was timely filed and whether conduct on behalf of various defendants served to toll the running of the applicable time period. We need not determine whether a tolling occurred because as we discuss below, the purported notice was otherwise deficient.

Rather than serving upon the affected parties a document encaptioned "Tort Claims Notice," J.A.W. forwarded the DPW a draft complaint of an intended lawsuit. The complaint set forth various allegations regarding the failure of Defendants and others to protect J.A.W. from abuse. Count I of the complaint was entitled "Violation of Civil Rights—Welfare Department," and Count II of the complaint was entitled "Violation of Civil Rights—Probation Department." *Record* at 443, 446. More importantly J.A.W. forwarded a cover letter along with the complaint which dictated among other things "[s]ince the claim against the Department is a civil rights claim based upon *DeShaney* [*v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ], the Indiana Torts Claim notice requirement does not apply." *Record* at 491.

We recognize that under some circumstances a draft complaint may satisfy the notice requirements of the ITCA. For example if the complaint sets forth sufficient detail including the names of those involved, the extent of the loss, the time and place of the loss, the circumstances that brought about the loss, the amount of damages sought, and the residence of the person making the claim, then the requirements of the ITCA will have been satisfied. *See* I.C. § 34–4–16.5–9. Hence, in this case J.A.W.'s draft complaint, standing alone, may have sufficed as a tort claims notice. However, by stating that his complaint was based upon a violation of civil rights and thus no tort claims notice was required, J.A.W. specifically rejected the notion that his complaint was anything other than notice that some form of legal action would be pursued against the DPW and others. In sum, rather than being construed as a tort claims notice, the complaint and cover letter here can only be construed as a "non" tort claims notice. Accordingly, the documents did not comply with the provisions of I.C. §§ 34–4–16.5–1 to –20.

J.A.W. counters that regardless of the deficiencies in his purported notice, he nonetheless substantially complied with the notice provisions of the ITCA. According to J.A.W. the Defendants' actual knowledge of events giving rise to his claims coupled with investigations conducted by the Marion County Prosecutor demonstrate that the purposes of

the notice provisions were fulfilled. Additionally, J.A.W. contends the doctrines of waiver and estoppel preclude a claim by Defendants that he failed to comply with the ITCA.

The doctrines of substantial compliance, waiver and estoppel, although sometimes used interchangeably, are separate and distinct theories. Substantial compliance refers to the nature of the notice itself, and is concerned with the extent to which the form and content of the notice comply with the requirements of the notice statute. *City of Tipton v. Baxter* (1992), Ind.App., 593 N.E.2d 1280, 1282 n. 1. When examining a claim of substantial compliance, we consider the acts of the plaintiff; the critical inquiry is whether the plaintiff has fulfilled his affirmative duty to deliver a writing describing the claim. *Coghill v. Badger* (1981), Ind.App., 418 N.E.2d 1201, 1208 n. 6, *reh'g denied*, 430 N.E.2d 405. The theory of waiver focuses on the defendant's failure to timely raise noncompliance with the statute as a defense. *Baxter*, 593 N.E.2d at 1282 n. 1. Finally, estoppel focuses on representations made by the defendant or its agents to the plaintiff, which induce the plaintiff to reasonably believe that formal notice is unnecessary. *Allen v. Lake County Jail* (1986), Ind.App., 496 N.E.2d 412, 415 n. 3, *reh'g denied*.

J.A.W.'s argument that the defendants' actual knowledge and investigations concerning the alleged injury demonstrate substantial compliance is without merit. Our courts have repeatedly so held. *Indiana State Highway Comm'n v. Morris* (1988), Ind., 528 N.E.2d 468, 471 citing *Delaware County v. Powell* (1979), 272 Ind. 82, 84, 393 N.E.2d 190, 191; *Parke County v. Ropak, Inc.* (1988), Ind.App., 526 N.E.2d 732, 737, *trans. denied; Governmental Interinsurance Exch. v. Khayyata* (1988), Ind.App., 526 N.E.2d 745, 746. Also, J.A.W.'s' claim that he otherwise substantially complied with the notice provisions of the ITCA is equally unavailing.

It is true that where a claimant substantially complies with the ITCA his failure to provide formal notice will not operate as a bar to suit against the governmental entity. *Ammerman v. State* (1994), Ind. App., 627 N.E.2d 836, 838; *Board of Aviation Comm'rs v. Hestor* (1985), Ind.App., 473 N.E.2d 151, 154. However, it is equally true that substantial compliance requires that the purposes of the notice provisions be served, namely that the agency be informed of the circumstances surrounding the incident so it can investigate, determine its possible liability and prepare a defense to the claim. *Hasty v. Floyd Memorial Hosp.* (1992), Ind. App., 612 N.E.2d 119, 123; *Indiana Dept. of Pub. Welfare v. Clark* (1985), Ind.App., 478 N.E.2d 699, 702–03, *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2893, 90 L.Ed.2d 980 (1986). In order to constitute substantial compliance the notice must not only inform the governmental entity of the facts and circumstances of the alleged injury but must also advise of the injured party's intent to assert a tort claim. *See Collier v. Prater* (1989), Ind., 544 N.E.2d 497, 499; *Indiana State Highway Comm'n v. Morris* (1988), Ind., 528 N.E.2d 468, 471; *Rosga v. City of Hammond* (1985), Ind.App., 493 N.E.2d 787, 789, *trans. denied*.

In this case, not only did J.A.W. not advise DPW that he intended to assert a tort claim, but also J.A.W. specifically asserted that no tort claims notice was required. As a result DPW had no reason to investigate J.A.W.'s various claims to determine its possible tort liability. Contrary to J.A.W.'s assertion there was no substantial compliance here. Further, J.A.W's claim of waiver also lacks merit. The record is clear that the defendants timely raised J.A.W.'s non-compliance with the statute as an affirmative defense in their answers as well as in their motions for summary judgment.

In support of his position that the defendants should be estopped from asserting non-compliance with the ITCA, J.A.W. makes a number of allegations, only one of which merit comment. Specifically, J.A.W. alleges that he was advised by a Marion County deputy prosecutor to postpone the filing of a civil lawsuit until after Bramblett had been convicted. Thus, according to J.A.W., he was induced into believing that no formal notice was necessary. *See Allen*, 496 N.E.2d at 415 n. 3. This argument is not persuasive. J.A.W. does not allege, and

nothing of record before us reveals, that he was encouraged not to file a tort claims notice. Rather J.A.W. was simply asked to forebear in any legal action until after Bramblett had been convicted. At most J.A.W's reliance on the deputy prosecutor's representation only affected the timeliness of the notice. However, regardless of the timeliness, the purported notice was deficient for other reasons previously discussed. Because J.A.W. has failed to demonstrate substantial compliance, waiver or estoppel, his failure to comply with the notice provisions of the ITCA is fatal to his claims in tort.

J.A.W. also contends that his tort claims against Brian Toepp are not barred for failure to provide tort claims notice because Toepp is not entitled to receive such notice. Rather, J.A.W. argues, the ITCA requires notice only to governmental entities.

 J.A.W. is correct that ITCA provisions require notice only to governmental entities. I.C. § 34–4–16.5–6 and –7. However, because a tort action against a governmental employee for actions taken within the scope of his employment may impose liability upon the governmental employer, the plaintiff must provide notice to the employing agency before an action can proceed against the employee. *Poole v. Clase* (1985), Ind., 476 N.E.2d 828, *reh'g denied; VanValkenburg v. Warner* (1992), Ind.App., 602 N.E.2d 1046, *trans. denied.* Here, the record reveals that the actions complained of by J.A.W. were performed in the course of Toepp's official duties as a probation officer. Toepp was thus acting within the scope of his employment, and J.A.W. was required to provide notice to Probation of his intended claims. Because J.A.W. failed to provide such notice, his tort claims against Toepp are barred under the provisions of the ITCA. *See Poole,* 476 N.E.2d at 831–32.

 Finally, we also note that the documents here were not sent to the proper parties. Depending upon the nature of the entity being sued, the ITCA requires that notice be sent to the state agency involved and the attorney general or to the governing body of the political subdivision and the subdivision risk management commission. Here, the letter and draft complaint were sent only to DPW. The documents thus failed to serve the purposes of the notice provisions by notifying Defendants of an impending tort claim. *See Indiana Dept. of Correction v. Hulen* (1991), Ind., 582 N.E.2d 380. The trial court did not err in granting summary judgment for Defendants on the tort theories alleged in J.A.W.'s complaint.

## III. ADDITIONAL CLAIMS AND PARTIES

J.A.W. filed his original complaint on February 27, 1990. After considering Defendants' motions for more definite statement, Ind.Trial Rule 12(E), the trial court ordered J.A.W. to amend his complaint in order to more clearly identify the nature of his § 1983 claims. Pursuant to the trial court's order J.A.W. filed his first amended complaint on August 17, 1990. At a hearing on the motions for summary judgment conducted over two years later, DPW, Probation, and Toepp again challenged the complaint arguing J.A.W. had still failed to set forth specific facts identifying the basis for his § 1983 claims. Again the trial court instructed J.A.W. to amend his complaint for the sole purpose of stating with more specificity his § 1983 allegations. The trial court indicated "[t]his is your last opportunity to amend your complaint to comply with 1983...." *Record* at 855. Thereafter J.A.W. filed his second amended complaint adding numerous additional claims and nine new party defendants. The trial court entered an order dismissing the added parties from this action.

J.A.W. contends the trial court erred in dismissing his additional claims and additional parties. According to J.A.W. *"[s]ua sponte* dismissal without prior notice or an opportunity to be heard on issues underlying dismissal is hazardous." *Brief of Appellant* at 20. J.A.W. then sets forth a laundry list of reasons why the trial court should not have "dismissed" the nine additional defendants and numerous additional claims, including the parties' alleged discovery abuses.

J.A.W.'s focus is misplaced. Although the trial court referred to its action as a dismissal, the trial court actually refused to allow J.A.W. to amend his complaint in order to

add additional claims or parties. Indiana Trial Rule 15(A) provides the mechanism by which a party may amend his pleading. *Palacios v. Kline* (1991), Ind.App., 566 N.E.2d 573, 575. That rule provides that after a responsive pleading is served, a party may amend its pleading "only by leave of court or by written consent of the adverse party," and leave shall be given when justice so requires. T.R. 15(A).

 When presented with a request for leave to amend, the trial court may consider a number of factors including undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment. *Indiana High School Athletic Ass'n, Inc. v. Schafer* (1992), Ind.App., 598 N.E.2d 540, 555, *trans. denied,* quoting *Palacios,* 566 N.E.2d at 575. In support of a duly filed motion to amend his complaint J.A.W. could therefore have presented to the trial court his argument that discovery violations prevented his prior discovery of the claims and parties. However, J.A.W. did not file a motion to amend his complaint nor did he obtain written consent from the adverse parties. Instead, he attempted to add claims and parties without authorization. Even where a party's motion for leave to amend is denied, we review the trial court's decision for abuse of discretion. *Palacios,* 566 N.E.2d at 575; *Beta Alpha Shelter of Delta Tau Delta Fraternity, Inc. v. Strain* (1983), Ind.App., 446 N.E.2d 626, 631. In this case leave was never sought and we find no error.

## IV. CONCLUSION

Because the Marion County Department of Public Welfare (DPW) is not an arm of the state for Eleventh Amendment purposes and is rather a unit of local government, it is a "person" subject to suit under 42 U.S.C. § 1983. The trial court's ruling to the contrary is in error, and its grant of summary judgment in favor of DPW on this claim must be reversed. In all other respects the judgment of the trial court is affirmed.

Judgment affirmed in part and reversed in part.

BARTEAU and SULLIVAN, JJ., concur.

