**Louis KUJAWSKI, Plaintiff,**

**v.**

**BOARD OF COMMISSIONERS OF BARTHOLOMEW COUNTY, INDIANA, State of Indiana, and Bartholomew County Community Corrections Department, Defendants.**

**No. IP 96–1798–C B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 26, 1998.

Allen E. Grotke, Grotke & Bekes, Greenwood, IN, for Plaintiff.

James Stephenson, Michael Morow, Stephenson, Daly, Morow & Kurnik, Indianapolis, IN, for Defendants.

## ENTRY GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARKER, Chief Judge.

This matter comes before the Court on a motion for summary judgment filed by Defendants Board of Commissioners of Bartholomew County (the "County" or "Commissioners") and Bartholomew County Community Corrections Department (the "Department"). For the reasons set forth below, we *grant in part* Defendant's motion as to Plaintiff's § 1983 claim against the Department.

### STATEMENT OF FACTS

Plaintiff, Louis Kujawski, is an individual residing in Bartholomew County, Indiana. *See* Amend. Compl. ¶ 1; County Ans. ¶ 1; Dept. Ans. ¶ 1. Defendant Commissioners perform the executive functions of Bartholomew County, Indiana. *See* Amend. Compl. ¶ 2; County Ans. ¶ 2; Dept. Ans. ¶ 2. Plaintiff was hired in August 1994 by the Department as a Community Corrections Officer. *See* Plaint. Aff. ¶ 3; Defs. Exh. D at 30.

On October 27, 1994, Plaintiff attended a farewell party in the Community Corrections Office for Plaintiff's supervisor, Mike Richardson. *See* Plaint. Aff. ¶¶ 8–9; Defs. Exh. D at 71. At this party, Plaintiff entered into a discussion with Bartholomew County Superior Court Judge Chris Monroe in which Plaintiff criticized the probation department's practices for not confiscating weapons from detainees. *See* Plaint. Aff. ¶¶ 10–14; Defs. Exh. D at 77. Plaintiff recounted the story of a particular detainee whose house was searched by a Community Corrections Officer and Victor Parker ("Parker"), the Chief Probation Officer. During the search, a gun was found in the detainee's chest of drawers, and Parker allegedly ordered that the gun be returned to the drawer in which it was found, where the detainee allegedly had direct access to the gun. *See* Plaint. Aff. 2 12; Defs. Exh. D at 77–78.

Plaintiff expressed his concern over these events to Judge Monroe, asserting that this practice presented a hazard to Community Corrections Officers like Plaintiff himself. *See* Plaint. Aff. ¶¶ 12–15; Defs. Exh. D at 78. Judge Monroe criticized the practice as explained by Plaintiff, immediately dictating a new policy for weapons confiscation from detainees, and Plaintiff openly thanked him. *See* Plaint. Aff. ¶ 16; Defs. Exh. D at 82–84. Parker was present during Plaintiff's conversation with Judge Monroe and was visibly angered by the judge's criticism, although he said nothing at the time. *See* Plaint. Aff. ¶ 15; Defs. Exh. D at 82.

A little more than a month later, on December 2, 1994, Parker called Plaintiff into his office and fired him from his position as Community Corrections Officer. *See* Plaint. Aff. ¶ 17; Defs. Exh D at 93–94. Plaintiff subsequently wrote letters to various officials and filed a grievance with his supervisors. *See* Plaint. Aff. ¶ 18; Defs. Exh. D at 97–98, 105–106. Parker, as Chief Probation Officer and Court Services Administrator, answered Plaintiff's request for a termination letter, stating that Plaintiff had been only a probationary employee, and that Plaintiff had not followed instructions, the proper chain of command and certain departmental procedures during his employment period. *See* Plaint. Exh. D. None of the officials to whom Plaintiff appealed acted to reverse Plaintiff's termination. Thus, Plaintiff filed the current action, alleging that Parker fired him in retaliation for Plaintiff's exercise of his First Amendment rights, specifically, for publicly criticizing Parker's weapons confiscation policy.

Defendants advance several arguments for summary judgment, several of which the Court does not need to reach at this time. Defendants' primary assertions are that (1) the Department is not an entity

with a separate legal identity from the County and therefore is not a proper defendant to this action (*see* Defs. Mot. Br. at 14) and (2) Plaintiff has not shown that any policymaking decision of the County was involved in Plaintiff's termination (*see* Defs. Mot. Br. at 10).

### SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Methodist Med. Center v. American Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir.1994). A disputed fact is material only if it might affect the outcome of the suit in light of the substantive law. *See Anderson*, 477 U.S. at 248. In considering a summary judgment motion, a court must draw all justifiable inferences in a light most favorable to the opposing party, and must resolve any doubt against the moving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir.1992).

While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the nonmoving party may not simply rest on the pleadings, but must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1302 (7th Cir.1991). Conclusory allegations by a party opposing a motion for summary judgment cannot defeat the motion. *See Smith v. Shawnee Library System*, 60 F.3d 317, 320 (7th Cir.1995). "The moving party is 'entitled to a judgment

as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. However, if doubts remain as to the existence of a material fact, those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989).

### DISCUSSION

#### Municipal Department Not Proper Defendant

Defendants argue that the Department is entitled to summary judgment because it is not an entity separately suable from the Commissioners and thus not a proper defendant in this action. *See* Defs. Mot. Br. at 14–15. Plaintiff fails to respond to this argument in his response brief. *See* Plaint. Resp. Br. As a result, Defendants urge the Court to grant summary judgment in favor of the Department on the basis that Plaintiff failed to respond. *See* Defs. Rep. Br. at 2–3. Although Plaintiff's failure to respond to Defendants' argument indicates that Plaintiff does not or cannot dispute the accuracy Defendants' contention, we will nonetheless consider the merits of Defendants' argument.

The Supreme Court in *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) asserted that some municipal departments are merely arms of the local government for purposes of § 1983, as illustrated by the Court's decision in *Monell v. New York Dep't of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See Brandon*, 469 U.S. 464, 472, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). The suit in *Monell* was brought nominally against New York City's Department of Social Services, but the Court in *Brandon* asserted that the true defendant was the city, for "that Department had no greater separate identity from the city than did the Director of the Department when he was acting in his official capacity." *Brandon*, 469 U.S. at 472, 105 S.Ct. at 878. The *Brandon* Court equated the status of the municipal department in *Monell* with that of a municipal official sued in his official capaci-

ty—merely an agent of the municipality itself. *See Brandon,* 469 U.S. at 472, 105 S.Ct. at 878. In light of the Court's opinion in *Brandon* and federal courts applying its analysis, we believe that a municipal department is not an entity separately suable under § 1983 from the municipality unless there is a clear grant of authority for that department to sue and be sued in its own name or some other clear indication of separate legal existence from the municipality. *See, e.g., Vance v. County of Santa Clara,* 928 F.Supp. 993, 996 (N.D.Cal.1996) (municipal departments are not "persons" for purposes of § 1983); *Stump v. Gates,* 777 F.Supp. 808, 816 (D.Colo.1991) (municipal departments have no identity independent of the municipality and cannot be sued separately from the municipality in a § 1983 suit).

Plaintiff has not directed the Court to any statute or other source of authority indicating that the Bartholomew County Community Corrections Department has a separate legal existence from the County, and the Court has been unsuccessful in finding any such authority. Thus, we hold that the Department cannot be held liable under § 1983 separately from the County. Accordingly, we *grant* Defendants' motion for summary judgment as to Plaintiff's § 1983 claim against the Department.[1] In any event, Plaintiff's § 1983 claim against the Department appears to be directed ultimately at the County ("The Bartholomew County Commissioners . . . are responsible for overseeing the actions of the Community Corrections Department," Plaint. Resp. Br. at 11), and this ruling does not address Plaintiff's claims against the County.

*Municipal Policy or Custom Under § 1983*

▮ Defendants move for summary judgment on Plaintiff's § 1983 claim against the County, arguing that Plaintiff has not established the existence of a municipal policy or custom that proximately caused the alleged constitutional deprivation. *See* Defs. Mot. Br. at 13. Section 1983 provides in relevant part:

Any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or any other proper proceeding for redress.

42 U.S.C. § 1983. Defendants contend that Plaintiff's theories of liability are negligence and *respondeat superior,* which are not actionable under § 1983. *See* Defs. Rep. Br. at 6–7. Plaintiff fails to respond to this argument as well. However, we will again examine the complaint, the briefs, the evidence and Plaintiff's Proposed Findings of Disputed Facts to determine whether Plaintiff has sufficiently established the existence of a municipal policy or custom.

In *Monell v. New York Dep't of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court determined that municipalities could be held liable under § 1983 for constitutional deprivations but rejected the *respondeat superior* theory of liability, holding that municipalities could be liable only for those violations caused by official policy, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *See Monell,* 436 U.S. at 690–694, 98 S.Ct. at 2035–2038. Developing this doctrine further, the Seventh Circuit in *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir.1995) identified three ways in which an individual can establish the existence of a municipal policy or custom:

(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'

---

**1.** We do not address the question of whether the Department is a proper defendant with regard to Plaintiff's state law claims at this time. While it seems that a similar analysis would apply, the

only cases Defendants cite for the proposition that the Department is not an entity separately suable from the County involve § 1983 claims.

Plaintiff does not contend that the County had an official policy that, when applied, caused Plaintiff's First Amendment deprivation. Nor does Plaintiff assert that there was a widespread practice of First Amendment violations within the County. Rather, Plaintiff's § 1983 claim stems from a single, isolated event: Plaintiff's termination, allegedly resulting from his one conversation with Judge Monroe about weapons safety in detentions. *See* Amend. Compl. ¶¶ 16–19; Plaint. Disp. Facts ¶ 7–8. Proof of a single act of misconduct is not sufficient to impose municipal liability under § 1983 for "widespread practices." *See Jackson v. Marion County,* 66 F.3d 151, 152 (7th Cir.1995) (citing *Cornfield by Lewis v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1326–1327 (7th Cir.1993)). Thus, the only way Plaintiff can prove that his alleged constitutional injury was caused by a municipal policy or custom is to show that the injury was caused by a person with final policymaking authority.

Examination of Plaintiff's own contentions and the evidence presented reveals that Plaintiff has not established that the person who fired him allegedly in violation of the First Amendment had final policymaking authority. First, Plaintiff asserts, and Defendants do not dispute, that Parker, the Chief Probation Officer, is the person who fired him. *See* Plaint. Disp. Facts ¶ 10; Defs. Mot. Br. at 5–6. Second, Plaintiff asserts that Parker "act[ed] as an agent for the Bartholomew County Board of Commissioners." *See* Plaint. Disp. Facts ¶ 10. Third, Plaintiff contends that "Bartholomew Count [sic] Board of Commissioners were [sic] negligent in failing to properly supervise subordinates in the Community Corrections Department, including Victor Parker ...." Plaint. Disp. Facts ¶ 15. In his response brief, Plaintiff argues further:

The Bartholomew County Commissioners are the executive for Bartholomew County, are responsible for overseeing the actions of the Community Corrections Department and are responsible for the actions of Victor Parker in this action. While Victor Parker was the Chief Probation Officer, when he was acting as the Department Head for the Community Corrections Department of Bartholomew County, he, at that time, was an employee of the County, subordinate to the Board of Commissioners and subject to their control. The failure of the Board of Commissioners to properly supervise Victor Parker when he was acting as the department head of the Community Corrections Department, their failure to properly perform the supervisory duties of their offices does not insulate the County from suit.

Plaint. Resp. Br. at 11.

These contentions by Plaintiff state a claim for *respondeat superior* and negligent supervision against the County. However, as Defendants correctly contend, these theories of liability are not actionable under § 1983 against a municipality. As the Supreme Court held in *Monell,* "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

▇ In addition, we find that in a First Amendment discharge claim, government officials are not liable under § 1983 for negligence, for such claim requires a showing of retaliatory intent. The Supreme Court in *Daniels v. Williams* stated that, while § 1983 does not have a specific intent requirement, "the plaintiff must still prove a violation of the underlying constitutional right, and depending on the right, merely negligent conduct may not be enough." *Daniels,* 474 U.S. 327, 329–330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). The Court held that procedural due process claims brought under § 1983 against municipalities require more than negligent conduct. *See Daniels,* 474 U.S. at 336, 106 S.Ct. at 667. Following *Daniels,* the Court in *Davidson v. Cannon* held that negligence does not give rise to substantive due process claims brought under § 1983. *See Davidson,* 474 U.S. 344, 346, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986).

Applying the principles in *Daniels* and *Davidson* to the First Amendment, both the Second and Fifth Circuits have found that negligent conduct is insufficient to support retaliatory First Amendment claims brought under § 1983, requiring the plaintiff to show retaliatory intent. *See Greenwich Citizens Comm., Inc. v. Counties of Warren and Washington Indus. Dev. Agency,* 77 F.3d 26, 31–32 (2d Cir.1996); *Neubauer v. City of*

*McAllen,* 766 F.2d 1567, 1580 (5th Cir.1985), *overruled on other grounds by Walther v. Lone Star Gas Co.,* 952 F.2d 119, 126 (5th Cir.), *opinion on reh'g,* 977 F.2d 161 (5th Cir.1992). Neither the Supreme Court nor the Seventh Circuit has ruled on this issue to our knowledge, but we find the approach of the Second and Fifth Circuits persuasive. Thus, we hold that Plaintiff cannot maintain his First Amendment retaliatory discharge claim against the County merely on a theory of negligence.

Plaintiff contends, in the alternative, that the County is liable for ratifying the decision to terminate Plaintiff. Plaintiff asserts that the County is liable for "failing and refusing to reverse the decision to terminate plaintiff." Plaint. Disp. Facts ¶ 15. Plaintiff also argues that the Board of Commissioners "exercised their decision making [sic] responsibilities when they made their deliberate choice to ratify the termination of Kujawski and follow the course of action started by Victor Parker," citing *Cornfield by Lewis v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1325 (7th Cir.1993) and *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–484, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). *See* Plaint. Resp. Br. at 12.

▉ In *Cornfield by Lewis,* the Seventh Circuit followed the Supreme Court's plurality opinion in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), in which the Court held that a municipality may be liable under § 1983 if its authorized policymakers review a subordinate's decision and approve the decision and the basis for it. *See Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (cited in *Cornfield by Lewis,* 991 F.2d at 1326). However, municipal liability for ratifying a subordinate's decision must conform with basic principles set forth in other Supreme Court decisions, such as *Pembaur,* in which the Court held:

> [M]unicipal liability attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1300. Thus, the County may be liable for ratification only if its final policymakers approved both the decision and the basis for it, and made a deliberate choice to do so.

▉ While the evidence establishes that Plaintiff attempted to have his termination decision reviewed by many authorities, including the County (*see* Defs. Exh. D—Dep. Exhs. 7–12), Plaintiff has not shown that any of those officials reviewing his termination ratified the alleged unconstitutional basis for it: retaliation for Plaintiff's exercise of his First Amendment rights. The grievance letters that Plaintiff mailed to Parker, the Department, the Bartholomew County judges and the County merely recount the reasons cited for Plaintiff's dismissal (that Plaintiff was a "loose cannon" and failed to act with appropriate decorum), to which Plaintiff responds that he was a "hard-working employee" with "exemplary" work performance and dedication. *See* Defs. Exh. D—Dep. Exhs. 7–8, 10–11. In these letters, Plaintiff complains that he was fired without just cause in a way that did not conform with the due process afforded terminated employees in the policy manual. *See* Defs. Exh. D—Dep. Exhs. 8, 10–11. At no point in these grievance letters does Plaintiff assert that he was fired in retaliation for criticizing Parker's practice of failing to secure weapons in the homes of detainees.

The case law is clear that a municipality must approve the alleged unconstitutional basis for its subordinate's decision in order for municipal liability to attach, but the evidence presented reveals, at best, that the officials reviewing Plaintiff's grievance merely refused to disturb the decision made by Parker. There is no evidence or contention by Plaintiff that the officials even knew of Plaintiff's conversation with Judge Monroe in which he criticized the weapons confiscation practices and the role that Plaintiff believes this speech played in his termination. In fact, the Bartholomew County Commissioners signed affidavits stating that they had no knowledge of Plaintiff's speaking out about the confiscation of weapons from detainees (*see* Defs. Exhs. A–C), which Plaintiff does not appear to dispute. Because there is no evidence that the Bartholomew County Board of Commissioners approved the allegedly unconstitutional basis for Plaintiff's ter-

mination, the County cannot be held liable under § 1983 for ratifying Parker's decision.

In addition to advancing the unavailing theories of liability against the County of *respondeat superior,* negligence and ratification, Plaintiff has produced no evidence from which a reasonable juror could conclude that Parker was a person with final policymaking authority for employees of the Department. Plaintiff does assert that the County "either explicitly or implicitly authorized Victor Parker to make decisions regarding the employees in the Community Corrections Department." Plaint. Resp. Br. at 11–12. Plaintiff also contends that Parker acted as the head of the Department when he fired Plaintiff. *See* Plaint. Resp. Br. at 11, 12.

However, Plaintiff cites no evidence in support of these propositions, and his bare, unsubstantiated assertions are not sufficient in response to a motion for summary judgment. While a reasonable juror could infer that Parker was granted some power to terminate employees of the Department simply from the fact that Parker did, in fact, fire Plaintiff, Plaintiff has presented no evidence that Parker was a person with final policymaking authority to do so. "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Eversole v. Steele,* 59 F.3d 710, 715 (7th Cir.1995) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–482, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986)); *see also Auriemma v. Rice,* 957 F.2d 397, 401 (7th Cir.1992) ("Responsibility for making policy . . . is authority to adopt rules for the conduct of government. Authority to make a final decision need not imply authority to establish rules.")

Though we believe that Plaintiff has not met his burden with the respect to the question of whether Parker was a person with final policymaking authority as to employment decisions for the Department, we hesitate to rule with finality on this issue at this time because a person's status as a final policymaker for purposes of § 1983 is a question of state or local law. *See Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1300; *Auriemma,* 957 F.2d at 400. Final policymaking authori-

ty may be granted directly by statute or may be delegated by an official having such authority. *See Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1300. The parties have been remiss in failing to address the issue of final policymaking authority under Indiana law over terminations of Community Corrections Officers in Bartholomew County.

We have examined the Indiana Code for direction regarding who possesses such authority, with limited success. Ind.Code § 11–12–2–3.5(b) states as follows:

> The community corrections advisory board may establish personnel policies, procedures, and salary classification schedules for its employees. Employees of a community corrections program are county employees. The policies, procedures, and schedules established under this subsection may not be inconsistent with those established for other county employees.

This section indicates that the community corrections advisory board possesses at least some policymaking authority regarding employment decisions. However, the statute implies that the County maintains some control over the hiring and firing of these employees as well. The advisory board has not been mentioned in this action thus far, and we have no information as to its existence in Bartholomew County or its role in the employment decisions of the Bartholomew County Community Corrections Department.

While the advisory board's existence and role remains unknown, Plaintiff has provided some evidence of the County's interest in employees of the Department. Plaintiff produced a portion of the Bartholomew County Personnel Policy manual, effective when Plaintiff was employed by the Department, which sets forth a grievance procedure for county employees. *See* Plaint. Exh. B. Plaintiff received a copy of this manual when he began working for the Department. *See* Plaint. Resp. Br. at 2; Defs. Exh. D at 35. The existence of this personnel manual, promulgated by the Board of Commissioners, indicates that the County possesses some, if not all, policymaking authority over employees of the Department. In addition, the grievance procedure outlined in the manual indicates that the Board of Commissioners

retains final authority and review over employee grievances against "any supervisor's action," which logically would include termination. *See* Plaint. Exh. B, Section VI. The parties have produced no additional policies governing the Department's personnel during Plaintiff's tenure.

There is also the further complication of the Department's connection to the Bartholomew County judiciary. Parker, as a probation officer and Court Services Administrator, is an employee of the Bartholomew County courts. *See* Ind.Code § 11–13–1–1. As Defendants correctly argue, the county courts in Indiana are entities of the state, not the county (*see* Defs. Mot. Br. at 12), and thus are not "persons" subject to suit under § 1983. *See J.A.W. v. State of Indiana,* 687 N.E.2d 1202, 1203 n. 3 (Ind.1997) (summarily affirming appellate court's holding in *J.A.W. v. State of Indiana,* 650 N.E.2d 1142, 1150–51 (Ind.Ct.App.1995)); *Woods v. City of Michigan City,* 940 F.2d 275, 279 (7th Cir. 1991). Parker similarly enjoys immunity from suit in his official capacity as a probation officer because the probation department is an arm of the court. *See J.A.W. v. State of Indiana,* 687 N.E.2d at 1203 n. 3 (summarily affirming holding in *J.A.W. v. State of Indiana,* 650 N.E.2d at 1151). Thus, in his role as probation officer, Parker's acts are attributable to the State of Indiana, not the County.

Nevertheless, it appears that the county judiciary and the Probation Department, represented by Parker, bear some responsibility for the Community Corrections Department, and thus Parker may be a county employee or agent in some respect, despite the County's argument to the contrary (*see* Defs. Mot. Br. at 10–13). The parties' briefing and evidence produced to date, as well as the Court's own research, do not provide information determinative of Parker's role in the Community Corrections Department, such as whether his involvement with the Department and the County stems from his position in the county judiciary or whether he holds some other position, and we prefer not to speculate. We note that Ind.Code § 11–12–2–2(a)(10)(B), which sets forth the membership of the advisory board, lists one probation officer as a member to be appointed by the County and to serve at the pleasure of the

County, but we have no evidence indicating that Parker, in fact, holds this position.

While we have good reason to believe that Parker does not possess final policymaking authority for the County and the Department, we will allow Plaintiff a final opportunity to try to meet his burden by addressing this issue squarely. Thus, we hereby grant Plaintiff fifteen days from the date of this entry to submit additional briefing and/or appropriate affidavits on the issue of Victor Parker's status as a person with final policymaking authority; Defendants will have seven days to respond. If Plaintiff fails to submit such additional briefing, our finding that Parker is not a person with final policymaking authority will stand, and summary judgment will enter against Plaintiff.

### State Law Claims

Defendants also move for summary judgment on Plaintiff's state law claims, and in the alternative, that the Court release pendent jurisdiction over Plaintiff's state law claims in the event that we dismiss Plaintiff's § 1983 claims, as set forth in *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349–351, 108 S.Ct. 614, 618–619 n. 7, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See* Defs. Mot. Br. at 21. Because we have not finally disposed of Plaintiff's § 1983 claim against the County nor had the opportunity to address the § 1983 claim against the State of Indiana, the third defendant in this case, we will reserve a decision on these issues at this time. We will address this issue after Plaintiff has submitted his additional briefing on the § 1983 claim against the County and has responded to the Court's show cause order, as set forth below.

### Order to Show Cause

We note that the State of Indiana has not entered an appearance in this action, although named as a defendant in the Amended Complaint, dated June 19, 1997. *See* Amend. Comp. The Court suspects that the State chose to ignore the complaint because the law is so clear that a State is not an entity subject to § 1983 liability. *See Will v.*

**1242**

*Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). The Court has pendent jurisdiction over the state law claims against the State, but if we dispose of the § 1983 claims against the other defendants, we likely will release our pendent jurisdiction over the state law claims, as discussed above. Thus, while the State has not argued on its own behalf, in the interests of efficiency, we see no reason why the State should remain a party to this action in federal court when it is not a "person" for purposes of § 1983. *See Will,* 491 U.S. at 71, 109 S.Ct. at 2312. Thus, we hereby order Plaintiff to show cause within fifteen days from the date of this entry why the Court should not dismiss Plaintiff's § 1983 claim against the State of Indiana.

## *CONCLUSION*

Defendants move for summary judgment on the grounds that (1) the Department is not an entity suable separately from the County and (2) Plaintiff has failed to establish that the decision to terminate his employment with the Department was caused by a municipal policy or custom. For the reasons set forth above, we find that (1) the Department is not a proper defendant under § 1983 and (2) Plaintiff has failed to establish that a policy or custom of the County caused his alleged unconstitutional injury. Accordingly, we *grant in part* Defendants' summary judgment as to Plaintiff's § 1983 claim against the Department and defer final rulings on the remaining issues. We have granted Plaintiff fifteen days to address the question of whether Victor Parker is a person with final policymaking authority. The Court further orders Plaintiff to show cause within fifteen days as to why we should not dismiss Plaintiff's § 1983 claim against Defendant, the State of Indiana.