Lawrence T. NEWMAN, and Beverly R. Newman, Appellants–Plaintiffs,

v.

Charles J. DEITER, Paul Commiskey, Christopher Seigel, Marion County Sheriff, and Michael Bishop, Appellees–Plaintiffs.

No. 49A04–9710–CV–448.

Court of Appeals of Indiana.

Dec. 10, 1998.

See also, 650 N.E.2d 726.

William E. Daily, Danville, for Appellants–Plaintiffs.

Ellen White Quigley, Peter A. Schroeder, Indianapolis, Dale R. Simmons, Indianapolis, Jeffrey A. Modisett, Attorney General, Jon B. Laramore, Deputy Attorney General, for Appellees—Plaintiffs.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants Lawrence T. Newman and Beverly R. Newman (the "Newmans") appeal the trial court's order granting summary judgment in favor of Defendants–Appellees Christopher Seigel, Paul Commiskey, and the Marion County Sheriff (hereinafter collectively referred to as the "Sheriff"). The Newmans also appeal the trial court's order granting the motions to dismiss of Defendants–Appellees Charles J. Deiter ("Judge Deiter") and Michael Bishop ("Bishop").

We affirm.[1]

### ISSUES

The Newmans raise three issues which we restate as:

I. Whether the trial court committed reversible error by finding that Judge Deiter was entitled to absolute judicial immunity and granting Judge Deiter's motion to dismiss pursuant to Ind. Trial Rule 12(B)(6).

II. Whether the trial court committed reversible error by granting the Sheriff's motion for summary judgment.

III. Whether the trial court committed reversible error by granting Bishop's motion to dismiss pursuant to Ind. Trial Rule 12(B)(6).

### FACTS AND PROCEDURAL HISTORY

In 1991, the Newmans contacted the Children's Bureau of Indianapolis ("CBI"), an adoption agency, about the possibility of locating a child for adoption. In 1992, the Newmans became aware that a group of children, in Worcester County, Maryland, who were under the guardianship of Worcester County Department of Social Services ("WCDSS") were available for adoption. In March of 1993, CBI was advised by WCDSS that the Newmans had been selected as prospective adoptive parents for the children, a girl, L.C., and twin boys, R.C. and M.C. WCDSS entered into an Interstate Compact Placement Agreement with the Family Protection and Development Bureau of the

---

1. We note that thus far the Newmans have unsuccessfully prosecuted two appeals to this court involving the same factual situation as is involved in the case at bar. *See In the Matter of the Adoption of L.C.*, 650 N.E.2d 726 (Ind.Ct.App. 1995), *reh'g. denied, trans. denied, cert. denied,* 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547, and *In the Matter of L.C.*, 659 N.E.2d 593 (Ind.Ct. App.1995) *reh'g. denied, trans. denied, cert. de-* nied, —— U.S. ——, 117 S.Ct. 2515, 138 L.Ed.2d 1017. The Newmans have also unsuccessfully prosecuted a § 1983 action in federal court involving the same set of facts. *See Newman v. State of Indiana, et al.,* 129 F.3d 937 (7th Cir. 1997). This case is the latest chapter in the long history of the Newmans' attempts to adopt a child.

Indiana State Division of Family and Children, and CBI was approved as the local agency to supervise the placement of the children in Indiana.

Later in 1993, R.C. and M.C. were returned to Maryland prior to adoption due to difficulties associated with the placement. However, the Newmans notified the WCDSS caseworker that they wanted to adopt L.C. WCDSS filed a petition in the Circuit Court of Worcester County, Maryland, requesting the immediate return of L.C. to the custody of WCDSS. In March 1994, the Maryland court issued an order calling for the return of L.C. to Maryland. The Maryland order was filed in the Marion County Probate Court, before Judge Deiter, for the purpose of obtaining full faith and credit of that order. Bishop, who represented CBI, was retained by WCDSS for representation in Indiana.

On April 13, 1994, the Newmans filed a petition to adopt L.C. in the Marion County Superior Court, Probate Division. On April 22, 1994, the WCDSS filed its motion to contest the adoption, and the matter was set for a hearing.

On May 12, 1994, Judge Deiter issued an order granting full faith and credit to the Maryland order, and ordered the return of L.C. to Maryland. That order was subsequently amended to provide that the Newmans deliver L.C. to CBI by 2:00 p.m. on May 27, 1994. Judge Deiter's order was affirmed on appeal, and is reported as *In the Matter of L.C.*, 659 N.E.2d 593 (Ind.Ct.App. 1995), *reh'g. denied.*

On May 27, 1994, the Newmans were involved in a hearing in federal court for a stay of Judge Deiter's order. That hearing was not completed until 6:00 p.m. Judge Deiter informed the Newmans' attorney that he would not enforce the order until completion of the federal court hearing. The federal court denied the Newmans' request for a stay. By that time CBI's offices were closed, so the Newmans returned home.

At 5:50 p.m. on May 27, 1994, Judge Deiter issued a Writ of Assistance to the Sheriff, authorizing the Sheriff to use any and all force necessary to obtain L.C. from the Newmans. The order provided that the sheriff was "authorized to arrest any person and bring him or her to this Court to show cause

why he or she should not be punished for contempt, and to hold such person until Court is in session." (R. 151).

At 10:00 p.m. that same day, Christopher Seigel, attorney for the Marion County Sheriff, and Paul Commisky, Sheriff's Deputy, came to the Newmans' home. They did not request the surrender of L.C. at that time, but Seigel discussed that issue with the Newmans and their attorney for approximately an hour. There is conflicting evidence about who made the request, but the Newmans complaint alleges that at approximately 11:00 p.m. Seigel suggested calling Judge Deiter at his office to arrange an emergency "best interests" hearing. Seigel then called Judge Deiter and arranged for the hearing. Judge Deiter agreed to stay his removal order until the Newmans could return home and have a few minutes with L.C. before she was removed, if they did not succeed at the hearing. The Newmans, their attorney, and Seigel left the Newmans' home to attend the hearing. No one from CBI or WCDSS was present at the hearing.

Judge Deiter held the hearing in his office. According to the complaint, no court reporter was present, no witnesses were sworn and no record was made of that hearing. After approximately 45 minutes, Judge Deiter announced to the Newmans that he was ordering the Sheriff to their home to remove L.C., and that they were not allowed to leave his office until this was accomplished. Judge Deiter, in an affidavit submitted to the trial court in response to the Newmans' motion to correct errors, stated that he did this because Mrs. Newman appeared to be visibly agitated and emotionally unstable, Mrs. Newman's statements led Judge Deiter to believe that she would not voluntarily give up the child, and the Newmans would attempt to prevent removal of L.C., thereby creating an emotionally upsetting scene at their home. Judge Deiter further stated that he believed it to be in L.C.'s best interest for the Sheriff to remove L.C. from the Newmans' home immediately. Judge Deiter ordered two deputies to guard the inner and outer areas of his office to prevent the Newmans from leaving.

L.C. was removed from the Newmans' home, and after waiting approximately an hour and a half for that to be accomplished, the Newmans were allowed to leave Judge Deiter's office.

On June 7, 1994, Judge Deiter, after hearing the Newmans' petition to adopt L.C., denied the petition. The Newmans appealed this decision, which was affirmed and is reported as *In the Matter of the Adoption of L.C.*, 650 N.E.2d 726 (Ind.Ct.App.1995).

On May 23, 1996, the Newmans filed a complaint against various defendants.[2] This complaint is 62 pages in length and names many state agencies and officials from Indiana and Maryland as defendants. Judge Deiter, Bishop and the Sheriff are the only defendants who are parties to this appeal. Judge Deiter filed a motion to dismiss and memorandum in support thereof on July 15, 1996. Bishop filed a motion to dismiss and memorandum in support thereof on August, 15, 1996. A hearing was held on November 25, 1996, and all motions to dismiss were taken under advisement. On December 9, 1996, the trial court granted the motions to dismiss filed by Bishop and Judge Deiter. On December 11, 1996, the Sheriff filed a motion for summary judgment and memorandum in support thereof. On January 7, 1997, the Newmans filed a motion to correct errors and memorandum in support thereof. On January 24, 1997, Judge Deiter filed his objection to the Newmans' motion to correct errors in which he invited the trial court to convert his motion to dismiss into a motion for summary judgment. On March 3, 1997, the trial court granted the Newmans' request for entry of separate judgment under T.R. 54(B). On March 27, 1997, the Newmans filed a motion to correct errors and memorandum in support thereof. Oral argument was heard on the pending motions on June 2, 1997. On June 30, 1997, the trial court denied the motion to correct errors and entered a final judgment in favor of the Sheriff.

## DISCUSSION AND DECISION

### I. JUDGE DEITER

The Newmans argue that the trial court erred in granting Judge Deiter's motion to dismiss. Judge Deiter contends that the trial court correctly determined that he was entitled to absolute judicial immunity; therefore, granting the motion to dismiss was appropriate. We agree with Judge Deiter.

■ An Ind. Trial Rule 12(B)(6) motion to dismiss tests the legal sufficiency of the complaint. *Right Reason Publications v. Silva*, 691 N.E.2d 1347, 1349 (Ind.Ct.App. 1998). When reviewing a T.R. 12(B)(6) motion to dismiss, we view the pleadings in the light most favorable to the non-moving party, and draw every reasonable inference in favor of that party. *Id.* We will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts, which, even if true, would not support the relief requested in that complaint. *Id.* Moreover, we will affirm the trial court's grant of a motion to dismiss if it is sustainable on any theory or basis found in the record. *Id.*

■ Viewing the facts alleged in the complaint in a light most favorable to the Newmans, the complaint, even if true, does not support the requested relief. It is well-settled that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless those actions are taken in the complete absence of any jurisdiction. *J.A.W. v. State*, 650 N.E.2d 1142, 1151 (Ind. Ct.App.1995) *as affirmed by J.A.W. v. State*, 687 N.E.2d 1202, 1215 (Ind.1997). The underlying purpose of the immunity is to preserve judicial independence in the decision-making process. *Id.* Judicial decision-making without absolute immunity would be driven by fear of litigation and personal monetary liability. *Id.*

2. The Seventh Circuit Court of Appeals described the Newmans' § 1983 complaint as follows:

> A married couple in Indiana, disappointed in their efforts to adopt a Maryland child, have brought a hopeless suit against 54 named, and many unnamed, agencies, officials, and private persons in Indiana and Maryland. The complaint, most of which the district court dismissed on the pleadings (certifying these rul-

ings for immediate appeal under Fed.R.Civ.P. 54(b)), alleges in great detail a far-reaching and implausible conspiracy to prevent the Newmans, by reason of their being Jewish, from adopting Jewish (or, we suppose, any other) children.

*Newman v. State of Indiana, et al.*, 129 F.3d 937 (7th Cir.1997).

Nevertheless, the Newmans argue that Judge Deiter acted in absence of any jurisdiction in this matter and, therefore, should be subject to liability. We note that the Newmans' argument that there was a lack of personal jurisdiction over them must fail. The emergency "best interests" hearing was held for their benefit and they personally appeared for that hearing. There is no question that Judge Deiter had jurisdiction over adoption matters. The Newmans also challenge Judge Deiter's jurisdiction in issuing the order granting full faith and credit of the Maryland order. However, we have previously decided this issue finding that Judge Deiter had jurisdiction. *In the Matter of L.C.,* 659 N.E.2d 593, 602 (Ind.Ct.App.1995).

Moreover, the law is clear that a judicial officer will not be deprived of immunity because the action he took was in error, or in excess of his authority. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978), *reh'g. denied,* 436 U.S. 951, 98 S.Ct. 2862, 56 L.Ed.2d 795. He will be subject to liability only when he has acted in the clear absence of all jurisdiction. *Id.*

We agree with the Newmans that the Seventh Circuit Court of Appeals' comments about judicial immunity made in passing, in an opinion involving the same factual situation, are not precedent in this case and are dicta. However, we find them to be helpful in our resolution of this issue. We agree with the Seventh Circuit Court of Appeals' statement as follows:

In detaining the Newmans the judge was acting in his judicial capacity in a matter that was within at least the outer bounds of his jurisdiction; no more is required for the doctrine to apply....Given the ever-present potential for violence in domestic-relations situations, Judge Deiter would have been acting well within the scope of a domestic-relations judge's judicial function had he enjoined the Newmans from returning home until [L.C.] was removed. But as it was midnight when the hearing was held ... compliance with the usual

formalities attendant upon the issuance of an injunction would not have been practicable. So the judge just told them to stay put. The informality of the proceeding did not destroy the immunity, as is clear from *Mireles v. Waco [*502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)] *supra,* a factually similar case in which the Supreme Court reversed a denial of absolute immunity. (citations omitted).

*Newman v. State of Indiana, et al.,* 129 F.3d 937, 941 (7th Cir.1997).

The Seventh Circuit went on to state as follows:

It is irrelevant that the judge may have erred or that he may have had an improper motive ... Immunity washes out errors, and absolute immunity washes out bad motives.

*Id* at 942.[3]

The Newmans further assert that the Seventh Circuit's comments are not appropriate authority for this matter because the Seventh Circuit was deciding a § 1983 case and the case at bar is a state tort action. While we agree with their distinction in types of cases, the Newmans' argument is of no moment here. If the judge is acting within his jurisdiction, or even in excess of that jurisdiction absolute judicial immunity applies, regardless of the nature of the cause of action.

The same logic applies to the Newmans' claim that Judge Deiter and the Sheriff conspired to lure the Newmans from their home to the Judge's office for the hearing. First, we note that there is no independent cause of action for a civil conspiracy in Indiana. *See Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1234 (Ind.1994). But assuming *arguendo* that there was a separate cause of action for civil conspiracy, absolute judicial immunity applies, removing liability from suit.

The Newmans claim that international law provides them with a cause of action against Judge Deiter for false imprisonment regardless of the existence of judicial immunity.

---

**3.** The Seventh Circuit Court of Appeals issued a warning to the Newmans as follows:

We warn the Newmans and their counsel that continued persistence in this quixotic litigation will invite the imposition of sanctions. We note in this connection that Mr. Newman is himself a lawyer.

129 F.3d at 940.

They cite to the International Covenant on Civil and Political Rights, G.A. res.2200A (XXI), 21 U.N.GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, as support for that proposition. This is an issue we do not decide. However, even assuming that the treaty applies to this situation and gives the Newmans a cause of action, the treaty would not override judicial immunity.

We find no error under any of the theories offered by the Newmans in the trial court's order granting Judge Deiter's motion to dismiss.[4]

## II. THE SHERIFF

The trial court decided that the motion for summary judgment submitted by Seigel, Commiskey and the Marion County Sheriff should be granted. The Newmans claim that the trial court erred in granting the motion.

A trial court's decision on a motion for summary judgment enters the process of appellate review clothed with a presumption of validity. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). The party appealing the grant of a motion for summary judgment must persuade the appellate court that error occurred. *Id.*

When reviewing a grant of summary judgment, we use the same standard as applied by the trial court. *Trotter v. Nelson,* 684 N.E.2d 1150, 1152 (Ind.1997). Summary judgment should be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In making our determination, we consider the evidence designated by the parties in a light most favorable to the non-moving party. *Id.* Any doubt about a fact or inference is resolved in favor of the non-moving party. *Id.*

Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Butler v. City of Indianapolis,* 668 N.E.2d 1227, 1228 (Ind.1996); Ind. Trial Rule 56(C). This is true even if the court believes the non-moving party will not succeed at trial. *Dague v. Fort Wayne Newspapers, Inc.,* 647 N.E.2d 1138, 1140 (Ind.Ct.App.1995), *trans.*

*denied.* Summary judgment should not be used as an abbreviated trial. *Watters v. Dinn,* 633 N.E.2d 280, 285 (Ind.Ct.App.1994).

The trial court must enter summary judgment if designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Rosi v. Business Furniture Corporation,* 615 N.E.2d 431, 434 (Ind.1993). An appellate court is prohibited from reversing summary judgment orders on the ground that there is a genuine issue of material fact unless material facts and relevant evidence were specifically designated to the trial court. *Id.*

The Newmans raise several issues regarding the Sheriff's conduct as it relates to the meeting in their home prior to the emergency hearing and in the judge's office after the emergency hearing. Among the Newmans' arguments that summary judgment was inappropriate are the following: 1.) that the Sheriff had discretion with respect to the enforcement of Judge Deiter's orders, thereby destroying judicial immunity, 2.) that the Sheriff was not enforcing Judge Deiter's orders, but was acting in furtherance of the alleged conspiracy of which the Sheriff and Judge Deiter were co-conspirators, 3.) that the order they challenge was Judge Deiter's oral order to temporarily detain the Newmans in his office until execution of his removal order had been completed, and that because the order was oral, the content of the order is unknown to them and thus, inappropriate for summary judgment, 4.) that there is a dispute over material facts, because the Sheriff, in its motion for summary judgment argued that the facts were undisputed for purposes of summary judgment only, while pleading disagreement over some facts in its answer, 5.) that the writ of assistance issued by Judge Deiter did not comply with normal procedures for contempt, thereby rendering the Sheriff's actions illegal, 6.) that the Newmans made no admissions in their response to the Sheriff's request for admissions, and 7.) that since the International Covenant on Civil and Political

---

4. The State argues that the judge would be entitled to immunity from suit under the Indiana Tort Claims Act, Ind.Code § 34–13–3–1 *et seq.*

However, we choose to decide this issue under the theory of absolute judicial immunity.

Rights allegedly creates a cause of action in the Newmans which supersedes any judicial immunity, immunity cannot absolve the Sheriff of liability.

A detailed discussion and resolution of many of these arguments is unnecessary because of our determination that Judge Deiter is afforded absolute judicial immunity for his actions in this matter. We note that many of the arguments presented above do not relate to the issue of appropriateness of summary judgment, but rather invite us to determine issues alleged in the Newmans' complaint. Therefore, we decline to determine those issues, and focus instead on the designated evidence which was before the trial court on the issue of summary judgment and the appropriateness of the trial court's determination.

■■■ We have held that absolute judicial immunity extends to persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune. *J.A.W.,* 650 N.E.2d at 1151–52. Moreover, we have held that the act of executing or enforcing a court order is a function intrinsically associated with judicial proceedings. *Id.,* at 1152. Moreover, a non-judicial officer who acts in furtherance of a valid court order cannot be deprived of immunity. *Id.* In addition, we have held that a sheriff who detains an individual for an extended period of time solely as a result of a judge's order is still entitled to judicial immunity from a claim of false imprisonment. *Grant County Commissioners v. Cotton,* 677 N.E.2d 1103, 1105 (Ind.Ct.App.1997).

■■■ Accepting all of the statements in the Newmans' complaint as true, which would be to construe all genuine issues of material fact in a light most favorable to the Newmans, the non-moving party, summary judgment was appropriate. The evidence discloses that the Sheriff was acting in furtherance of Judge Deiter's order to temporarily detain the Newmans while the removal order was being executed. The absolute judicial immunity afforded Judge Deiter properly extended to the Sheriff for those acts in furtherance of the judge's orders. The trial court did not err.

## III. BISHOP

The Newmans allege that the trial court committed reversible error in granting Bishop's motion to dismiss. Bishop contends that the trial court correctly determined that his motion to dismiss should be granted.

We note that the Newmans allege that they have sufficiently pleaded causes of action against Bishop which should survive a motion to dismiss for failure to state a claim upon which relief could be granted. However, the Newmans have failed to cite cogent authority setting forth what the elements of the various claims are and how the complaint sets forth facts which would support those claims. *See Armstead v. State,* 538 N.E.2d 943, 945 (Ind.1989); *See* Ind. Appellate Rule 8.3(A)(7). Waiver notwithstanding, we will address the Newmans' complaint as it relates to Bishop's conduct.

The Newmans alleged in Count I of their complaint that Bishop breached a contract with the Newmans. Bishop argued at the hearing where his motion to dismiss was considered that there in fact was no contract between him and the Newmans. The Newmans conceded that there was no valid claim against Bishop for breach of contract. Therefore, the trial court did not err in granting the motion to dismiss as to this count.

■■■ In Count II of their complaint, the Newmans alleged that Bishop breached a fiduciary duty to them. Our supreme court has held that a fiduciary relationship exists between attorney and client, making it necessary for the attorney to act in the utmost good faith. *Sanders v. Townsend,* 582 N.E.2d 355, 358 (Ind.1991).

■■■ We have searched the Newmans' complaint and have found no allegation that an attorney-client relationship ever existed between the Newmans and Bishop. In fact, the allegations state that Bishop was an attorney for CBI and was hired by WCDSS to pursue full faith and credit of the foreign order. The allegations state that the Newmans were clients of CBI. We note, in passing, that by the time the adoption proceedings had begun and enforcement of the removal order was sought, the Newmans' re-

lationship with CBI had deteriorated to the point that if any relationship existed, it was indeed an adversarial one. Further, the Newmans had retained their own counsel. The trial court did not err in granting the motion to dismiss as to Count II.

Count III of the Newman complaint alleges that Bishop interfered with the Newmans' contractual rights with WCDSS. Bishop's name is mentioned in the opening and closing paragraphs of the complaint, however, the Newmans fail to allege any conduct on Bishop's part relating to this claim.

 In order to recover under the claim of tortious interference with a contractual relationship five elements must be shown. *Winkler*, 638 N.E.2d at 1235. Those elements are: 1.) the existence of a valid and enforceable contract, 2.) the defendant's knowledge of the existence of the contract, 3.) the defendant's intentional inducement of breach of the contract, 4.) the absence of justification, and 5.) Damages resulting from the defendant's wrongful inducement of the breach. *Id.*

As stated above, we can find no allegations in the record which indicate Bishop's involvement in interfering with the Newmans' contractual rights. The trial court properly granted Bishop's motion to dismiss as to Count III.

Counts IV and Counts V of the Newmans' complaint allege that Bishop violated the Newmans' right to privacy and committed defamation, libel and slander against the Newmans. In addition to failing to cite to any authority to support the Newmans' argument that their complaint does state a claim against Bishop, the Newmans failed to make any argument in support of these claims during the hearing on the motion to dismiss. However, we will consider the Newmans' arguments below.

Again, we have searched the Newmans' complaint for any allegations involving Bishop's conduct which could establish a violation of the Newmans' right to privacy, defamation, libel, or slander. We find no allegations in that regard. Bishop was not involved in the preparation or release of the materials alleged to be libelous or defamatory. Neither are there facts to indicate that Bishop made statements which would constitute slander. In fact, there is no reference made to conduct by Bishop at all. The trial court did not err in granting Bishop's motion to dismiss Counts IV and V.

Count VIII of the Newmans' complaint alleges that Bishop was involved in a civil conspiracy to violate the Newmans' right to privacy, to interfere with the Newmans' adoption contract with WCDSS, to defame, libel and slander the Newmans, and to falsely imprison the Newmans. The trial court granted Bishop's motion to dismiss. We agree with the trial court.

 We previously stated that in Indiana there is no independent cause of action for civil conspiracy. *See Winkler*, 638 N.E.2d at 1234. Moreover, the only allegation made with regard to Bishop's conduct is that he opposed the Newmans' attempt to obtain a stay of Judge Deiter's removal order. This allegation is not sufficient to withstand a motion to dismiss. The trial court correctly dismissed this count against Bishop.

## CONCLUSION

The trial court correctly found that Judge Deiter was entitled to absolute judicial immunity from liability under the Newmans' complaint. Further, the trial court correctly granted the Sheriff's motion for summary judgment on the basis that the absolute judicial immunity from liability extended to those non-judicial officers acting in furtherance of Judge Deiter's orders. Finally, the trial court correctly granted Bishop's motion to dismiss.

Affirmed.

SHARPNACK, C.J., and RUCKER, J., concur.