H.B., A.B., M.B., and S.B., Appellants–Plaintiffs,

v.

STATE OF INDIANA–ELKHART DIVISION OF FAMILY & CHILDREN, Appellee–Defendant,

No. 71A05–9808–CV–406.

Court of Appeals of Indiana.

June 18, 1999.

Edward J. Chester, Elkhart, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Chris Worden, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

STATON, Judge

H.B., A.B., M.B., and S.B. (collectively, "the Children") appeal from the entry of summary judgment in favor of the State of Indiana—Elkhart County Office Division of Family and Children ("State"). The Children raise one issue for our review, which we restate as: whether the State is entitled to common law judicial immunity.[1]

We affirm.

The Children were removed from their mother's ("Mother") home in 1987 and placed in a foster home. On a weekend visit with Mother in July 1989, one of the children was allegedly molested by Mother's boyfriend ("Boyfriend"). This incident was reported to the Division of Family & Children (DFC), but not to law enforcement authorities. Following the report of molestation, the court ordered the child, Mother and Boyfriend to undergo counseling. In November 1990, the DFC recommended that the Children be reunited with Mother, who was still living with Boyfriend at the time of the recommendation. The Elkhart Juvenile Court took the recommendation of the DFC and ordered that the Children be reunified with Mother. Shortly after the reunification, and for more than two years thereafter, Boyfriend molested at least two of the Children.

The Children brought this action, alleging that the DFC was negligent in recommending that the Children be reunited with Mother. The Children also alleged that the DFC

---

1. Because we hold that the State is entitled to common law judicial immunity, we need not address the State's claims for other forms of common law immunity, or the claim for immunity under the Indiana Tort Claims Act.

was negligent for failing to report the 1989 molestation to law enforcement authorities. The State moved for summary judgment based on the doctrines of quasi-prosecutorial, judicial, and witness immunity, and the Indiana Tort Claims Act. The State also argued that there was no private cause of action available under IND.CODE § 31–6–11–5 (1988), the duty to report statute. The trial court granted summary judgment in favor of the State. The Children appeal.

■■■ The Children contend that the trial court erred by entering summary judgment in favor of the State based on the doctrine of common law immunity. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence, but will consider the facts in the light most favorable to the non-moving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.*

■■■ It is well-settled that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless those actions are taken in the complete absence of any jurisdiction. The underlying purpose of the immunity is to preserve judicial independence in the decision-making process. *Newman v. Deiter*, 702 N.E.2d 1093, 1097 (Ind. Ct.App.1998), *trans. denied,* (citing *J.A.W. v. State*, 650 N.E.2d 1142, 1151 (Ind.Ct.App. 1995), *affirmed on transfer*, 687 N.E.2d 1202, 1203 n. 3 (Ind.1997)).[2] Further, the same

policies that underlie the grant of absolute judicial immunity to judges justify the grant of immunity to non-judicial officers who perform quasi-judicial functions. *J.A.W.*, 650 N.E.2d at 1151 (citing *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir.1980)). Absolute judicial immunity therefore extends to persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune. *Id.* at 1151–52.

■■■ In determining whether a person is entitled to judicial immunity, the United States Supreme Court has established a functional approach, where the court looks to the nature of the function performed, not the identity of the actor who performed it. *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). This court has applied the test to a probation officer, who was acting as an officer of the court to assist the juvenile court in monitoring a child's placement with a foster family. *J.A.W.*, 650 N.E.2d at 1152. In holding that the probation officer was entitled to judicial immunity, the court looked to the functions he performed: the officer was required to meet regularly with the child, investigate any complaints regarding the placement, report the results of any investigations to the court, and make recommendations to the court regarding continued placement. This court held that "[e]ach of these activities was necessary for the implementation and enforcement of the trial court's order [regarding the foster child's placement]. As such, they were acts intimately associated with a judicial proceeding and entitled [the probation officer] to absolute immunity from suit." *Id.*

■■■ Similar to the probation officer in *J.A.W.*, the case workers employed by the DFC were acting to assist the juvenile court judge in his decisions regarding the care and custody of the Children. The DFC and its employees were acting under the direction of IND.CODE § 31–6–11–11 (1988), which states that case workers from the DFC "shall assist the juvenile court . . . during all stages of the

---

2. *Newman* was a state tort action. However, the *Newman* court relied on *J.A.W.*, a 42 U.S.C. § 1983 action, and held that common law judicial immunity is available in state tort actions against judges. The *Newman* court recognized the distinction between § 1983 cases and state

tort actions, and held that, "[i]f the judge is acting within his jurisdiction . . . absolute judicial immunity applies, regardless of the nature of the cause of action." *Newman*, 702 N.E.2d at 1098.

proceedings in accordance with the purposes of [the chapter regarding reporting and investigation of child abuse and neglect]." Specifically, after the Children were adjudicated Children in Need of Services ("CHINS"), the case workers were required to complete a case plan for the Children, IND.CODE § 31–6–4–6.6 (1988), and to prepare a predispositional report that included a recommendation for the care, treatment, and rehabilitation of the Children. IND.CODE § 31–6–4–15 (1988). The case workers, in addition to acting under the statutes, were acting in accordance with the juvenile court's order to monitor the progress made by the Children, Mother and Boyfriend.[3] Further, the DFC's recommendation to reunify the Children with Mother was made during a judicial proceeding. Thus, the case workers were acting as an arm of the juvenile court judge by implementing the court's order, and ultimately recommending that the Children be returned to Mother. We hold that, as in *J.A.W.*, these were acts intimately associated with a judicial proceeding and entitled the DFC to absolute immunity from suit.[4] Too, because the initial molestation took place after the Children were adjudicated CHINS and came under the supervision of the DFC, we hold that the failure of the DFC to report the 1989 molestation to law enforcement officials occurred in the course of the DFC's court-ordered duties, and falls within the scope of the DFC's judicial immunity. Thus, the trial court did not err by entering summary judgment for the State on its claim for judicial immunity.

Affirmed.

BAILEY, J., and FRIEDLANDER, J., concur.

---

**3.** It was in the course of that monitoring, in 1989, that the DFC learned of the initial molestation of one of the Children by Boyfriend.

**4.** We find that this case is distinguishable from *Lake County Juvenile Court v. Swanson*, 671 N.E.2d 429 (Ind.Ct.App.1996), *trans. denied*, wherein we declined to extend judicial immunity to employees of a juvenile detention center. In *Swanson*, we held that because the employees were not performing actions closely associated with the judicial process, they did not fall within the scope of judicial immunity. *Id.* at 435–36. However, in the present action, the caseworkers were performing functions closely related to the judicial process. Therefore, we hold that it is appropriate to extend judicial immunity to the State.