FILED

Nov 14 2023, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Theodore E. Rokita
Attorney General of Indiana

Frances Barrow
Supervising Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Jacob M. O'Brien
Scott L. Starr
Starr Austen & Miller, LLP
Logansport, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Marion Superior Court
Probation Department,

*Appellant-Defendant,*

v.

Cheryl Trapuzzano and Jennifer
Trapuzzano, as Co-Personal
Representatives of the Estate of
Nathan Trapuzzano, Deceased,

*Appellees-Plaintiffs.*

November 14, 2023

Court of Appeals Case No.
23A-CT-61

Appeal from the Marion Superior
Court

The Honorable Bruce E. Petit,
Special Judge

Trial Court Cause No.
49D12-1603-CT-9812

**Opinion by Judge Tavitas**
Judges Bailey and Kenworthy concur.

**Tavitas, Judge.**

## Case Summary

[1] In this interlocutory appeal, the Marion Superior Court Probation Department ("Probation Department") appeals the trial court's denial of its motion for summary judgment regarding claims brought by Cheryl Trapuzzano and Jennifer Trapuzzano, as co-personal representatives of the Estate of Nathan Trapuzzano ("Trapuzzano") (collectively, "the Estate"). The Estate brought claims against the Probation Department after a probationer shot and killed Trapuzzano during an apparent robbery. On appeal, the Probation Department argues that the trial court erred by denying its motion for summary judgment because: (1) the Probation Department did not owe a duty to Trapuzzano; (2) the Probation Department has common law immunity and immunity under the Indiana Tort Claims Act ("ITCA") from liability for the Estate's claims; and (3) the Probation Department was not the proximate cause of Trapuzzano's death. We find one issue dispositive and hold that the Probation Department has quasi-judicial immunity from liability for the Estate's claims. Accordingly, we reverse and remand.

## Issue

[2] The Probation Department raises three issues. We find one issue dispositive, which we restate as whether the trial court erred by determining that genuine issues of material fact existed regarding whether the Probation Department has quasi-judicial immunity from liability for the Estate's claims.

## Facts

[3] S.A. had an extensive juvenile history, which included offenses involving handguns. In December 2013, the State alleged that S.A. committed acts that would be auto theft, carrying a handgun without a license, possession of marijuana, operating a vehicle without a license, fleeing law enforcement, resisting law enforcement, and dangerous possession of a firearm if committed by an adult. The juvenile court found the auto theft and resisting law enforcement allegations to be true and dismissed the other charges. On February 10, 2014, S.A. was given a suspended commitment to the Department of Correction; placed on probation; placed on home confinement with his uncle; ordered to attend school; submit to a substance abuse evaluation; and attend counseling and the Restoring Excellence Program.

[4] Between February 11, 2014, and March 9, 2014, S.A. was in non-compliance with the terms of his probation on at least fifteen occasions because he was not at home during checks, was suspended from school, attended neither the Restoring Excellence Program nor counseling, and failed to submit to a substance abuse evaluation. Probation Department policy required S.A.'s probation officer, Tracy McDonald, to file a notice with the juvenile court after the third violation, but McDonald did not do so. On March 5, 2014, McDonald's supervisor, Christina Gibson, addressed the violations with McDonald in an email and asked why they "shouldn't go ahead and do a [petition to modify] on [S.A.]." Appellant's App. Vol. VI p. 218.

[5] On March 5, 2014, the Probation Department filed a petition for modification of the dispositional decree. The Probation Department alleged that S.A. received a five-day out of school suspension, failed to participate in the Restoring Excellence Program, and had unauthorized leaves from his residence on nine occasions. The Probation Department requested that the juvenile court schedule a hearing on the matter but did not request any emergency relief or request a change in S.A.'s placement. The juvenile court set the matter for a hearing on April 7, 2014. While waiting on the April 7 hearing, S.A. continued to violate the terms of his probation, burglarized a gun shop, shot a man outside of a restaurant, and on April 1, 2014, shot and killed Trapuzzano during an apparent robbery.

[6] In March 2016, the Estate filed a complaint against Marion County, the Probation Department, the Marion Superior Court Executive Committee, Christine Kerl, Tracy McDonald, and Marion County Community Corrections Agency.[1] The complaint was amended twice, and the second amended complaint alleged:

> 38. Defendants were negligent in many ways, including, without limitation, by:

---

[1] The parties do not mention whether the Estate filed a notice of tort claim pursuant to Indiana Code Section 34-13-3-8.

a. Failing to exercise reasonable care in the operation and administration of the Marion County Superior Court Probation Department;

b. Failing to exercise reasonable care in carrying out the responsibilities of probation officers in the Marion County Superior Court Probation Department;

c. Failing to follow the policies and procedures of the Marion County Superior Court Probation Department;

d. Failing to fulfill the mandatory duties of probation officers as prescribed by Indiana Code 11-13-1-3;

e. Failing to fulfill the duties of probation officers as required by the policies and procedures of the Marion County Superior Court Probation Department;

f. Failing to properly supervise Tracy McDonald and/or other probation officers;

g. Failing to properly hire, retain, train, oversee, and employ Tracy McDonald and/or other probation officers;

h. Failing to properly monitor and/or supervise [S.A.] per the terms of his probation; and

i. Failing to properly record, track, supervise, and notify authorities of violations of [S.A.'s] home detention.

Appellant's App. Vol. II pp. 41-42.

[7] The trial court dismissed all of the defendants except the Probation Department, and the Probation Department filed a motion for summary judgment. The Probation Department alleged that: (1) the Probation Department did not owe a duty to Trapuzzano; (2) the Probation Department had immunity from the Estate's claims; and (3) the Probation Department was not the proximate cause of Trapuzzano's death. The Estate filed a response, and the trial court conducted a hearing in July 2022.

[8] In November 2022, the trial court denied the Probation Department's motion. The trial court concluded that: (1) the Probation Department owed a duty to Trapuzzano; (2) genuine issues of material fact exist which may negate quasi-judicial immunity; (3) genuine issues of material fact exist which may negate discretionary function immunity under the ITCA; (4) law enforcement immunity under the ITCA is inapplicable; and (5) genuine issues of material fact exist regarding whether the Probation Department was the proximate cause of Trapuzzano's death. Regarding quasi-judicial immunity, the trial court found:

> 13. Courts are reluctant to apply quasi-judicial immunity too broadly and if the acts do not involve the judicial process so that a fear exists that freedom of judicial decision making may be stifled, then the person or act should not be shielded by immunity. *Lake County Juvenile Court v. Swanson*, 671 N.E.2d 429 (Ind. Ct. App. 1996). While it is true that the filing of a notice of probation violation should be considered an arm of the judicial officer who is immune and entitled to quasi judicial immunity, that may not be the case if the actor knowingly filed a false probation violation. *Thornton v. Pietrzak*, 120 N.E.3d 1139 (Ind.

Ct. App. 2019). In this cause, there is evidence that not only did [the Probation Department] omit information in the Petition filed with the Court which would be vital to the Court in determining appropriate action to take, but they also made recommendations contrary to their own belief and mandatory policies. I.C. 11-13-1-1(C) creates a mandatory duty to notify the Court when a violation of conditions or probation occurs and to keep accurate records of cases investigated by Probation Department and make these records available to the Court. *Id*. at 1144 ([e]mphasis added). If the facts alleged by the [the Estate] as set out in the depositions and emails from [Probation Department] employees are true, then the trier-of-fact could find that not only was the Petition filed by the [Probation Department] not in furtherance of a judicial determination, but an actual deterrence to that process. The [Estate] cites evidence that presiding Juvenile Judge Moores was extremely angry and upset to not have been provided with accurate information in the Violation of Probation Petition as filed. This could further support a finding that Probation's actions were outside the protection of quasi-judicial immunity. Based upon depositions of Christina Gibson, the trier-of-fact could find that the probation officer intentionally withheld vital information in the Petition filed which would negate the granting of immunity. *Parke City v. Ropak, Inc.*, 526 N.E.2d 732 (Ind. Ct. App. 1988).

14. The Court believes that there is also an issue of fact as to whether Probation was carrying out a Court Order. In order for judicial immunity to apply, the [d]efendant must be carrying out an order of the Court. Preparing reports for the Court's review to assist the Court in making a judicial determination is closely tied to a judicial proceeding. *D.L. v. Huck*, 978 N.E.2d 429 (Ind. Ct. App. 2012). However, to omit vital information as is alleged in the [Estate's] cause of action may be found to be actions not enforcing the Court's Order, but rather a direct violation of that Order. This is a question of fact for the trier and not appropriate for summary judgment.

15. The Court finds that there are sufficient questions of fact which may negate the protection afforded through quasi-judicial immunity and [the Probation Department's] Motion for Summary Judgment is denied on that ground.

\* \* \* \* \*

Appellant's App. Vol. II pp. 30-31. This Court then granted the Probation Department permission to bring this interlocutory appeal pursuant to Indiana Appellate Rule 14(B).

## Discussion and Decision

[9] The Probation Department appeals the trial court's denial of its motion for summary judgment. "'When this Court reviews a grant or denial of a motion for summary judgment, we stand in the shoes of the trial court.'" *Minser v. DeKalb Cnty. Plan Comm'n*, 170 N.E.3d 1093, 1098 (Ind. Ct. App. 2021) (quoting *Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020)). "Summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting *Murray v. Indianapolis Pub. Schs.*, 128 N.E.3d 450, 452 (Ind. 2019)); *see also* Ind. Trial Rule 56(C).

[10] The summary judgment movant invokes the burden of making a *prima facie* showing that there is no issue of material fact and that it is entitled to judgment as a matter of law. *Burton*, 140 N.E.3d at 851. The burden then shifts to the non-moving party, which must then show the existence of a genuine issue of

material fact. *Id.* On appellate review, we resolve "[a]ny doubt as to any facts or inferences to be drawn therefrom . . . in favor of the non-moving party." *Id.*

[11]  We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013). "We limit our review to the materials designated at the trial level." *Gunderson v. State, Ind. Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018), *cert. denied*. Because the trial court entered findings of fact and conclusions of law, we also reiterate that findings of fact and conclusions of law entered by the trial court aid our review, but they do not bind us. *In re Supervised Estate of Kent*, 99 N.E.3d 634, 637 (Ind. 2018).

[12]  In *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999), our Supreme Court held: "In general, it is only after a determination is made that a governmental defendant is not immune . . . that a court undertakes the analysis of whether a common law duty exists under the circumstances." Accordingly, we begin by addressing the parties' immunity arguments. "More than forty years ago, a series of judicial decisions almost entirely abolished common law immunity for government entities and activities in this state." *F.D. v. Ind. Dep't of Child Servs.*, 1 N.E.3d 131, 135-36 (Ind. 2013). "Under Indiana common law, with very limited exception, governmental entities are thus subject to liability under traditional tort theories." *Id.* at 136. The three limited exceptions are "crime prevention, appointments to public office, and **judicial decision-making**." *Id.* (citing *Benton*, 721 N.E.2d at 227) (emphasis added). In response, the Indiana General Assembly passed the ITCA. "This statute

granted absolute immunity to governmental entities in a number of specific circumstances, and codified rules of liability for other areas of governmental activity." *Id.*

[13] Whether immunity applies is a question of law for the court, and the party seeking immunity bears the burden of demonstrating that immunity applies. *Id.* "The negligence of a defendant 'is not relevant if it is immune. Immunity assumes negligence but denies liability.'" *Id.* (quoting *Catt v. Bd. of Comm'rs of Knox Cnty.*, 779 N.E.2d 1, 5 (Ind. 2002)).

[14] Although the parties discuss both common law quasi-judicial immunity and immunity under the ITCA, we resolve this matter on the basis of common law quasi-judicial immunity. "It is well-settled that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless those actions are taken in the complete absence of any jurisdiction." *H.B. v. Indiana-Elkhart Div. of Fam. & Child.*, 713 N.E.2d 300, 302 (Ind. Ct. App. 1999)*, trans. denied*. "The underlying purpose of the immunity is to preserve judicial independence in the decision-making process." *Id.* "[T]he same policies that underlie the grant of absolute judicial immunity to judges justify the grant of immunity to non-judicial officers who perform quasi-judicial functions." *Id.* "Absolute judicial immunity therefore extends to persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* "In determining whether a person is entitled to judicial immunity, the United States Supreme Court has established a functional approach, where the court

looks to the nature of the function performed, not the identity of the actor who performed it." *Id.* (citing *Forrester v. White*, 484 U.S. 219, 224, 108 S. Ct. 538 (1988)).

[15] "Probation in Indiana is a court function, and probation officers are trained, tested, hired, and supervised directly by the judiciary." *Ryle v. State*, 842 N.E.2d 320, 324 (Ind. 2005); *see also* Ind. Code Chapter 11-13-1 (discussing probation administration); Ind. Admin. Rule 18 (discussing the governance of county probation departments). Probation officers "serve at the pleasure of the appointing court and are directly responsible to and subject to the orders of the court." Ind. Code § 11-13-1-1(c).

[16] This Court has held that individual probation officers were entitled to quasi-judicial immunity where the plaintiff alleged that the probation officers "exceeded the scope of their authority as probation officers by failing to maintain accurate records and providing the sentencing court . . . with knowingly false information." *Thornton v. Pietrzak*, 120 N.E.3d 1139, 1143 (Ind. Ct. App. 2019), *trans. denied*. The plaintiff in *Thornton* alleged that probation officers erroneously filed a petition to revoke probation where he was not on probation. We noted that, "[p]ursuant to statute, probation officers have mandatory duties, including, to 'notify the court when a violation of a condition of probation occurs' and to 'keep accurate records of cases investigated by [them] and of all cases assigned to [them] by the court and make these records available to the court upon request.'" *Id.* at 1143-44 (citing Ind. Code § 11-13-1-3(7), (9)).

[17] In *Thornton*, the probation officers "followed their statutory duty to notify the court when a violation of a condition of probation occurred pursuant to the original sentencing order . . . and their belief that Thornton was still on probation at the time he committed new offenses because his probation had been tolled when he served an executed sentence in an unrelated case." *Id.* at 1144-45. We concluded that, "in filing the notice of probation violation, [the probation officers] were 'performing [a task] so integral or intertwined with the judicial process' that they should be 'considered an arm of the judicial officer who is immune.'" *Id.* at 1145. Accordingly, we held that the probation officers were entitled to quasi-judicial immunity and that the trial court properly granted summary judgment to the probation officers. *See also J.A.W. v. State*, 650 N.E.2d 1142, 1151-53 (holding that a probation officer had quasi-judicial immunity despite the claims that the probation officer was "derelict in the performance of his duties"), *vacated in part and summarily aff'd in relevant part by* 687 N.E.2d 1202, 1203 n.3 (Ind. 1997).

[18] Here, as in *Thornton*, the Estate alleges that the Probation Department withheld vital information from the petition for modification and intentionally provided false information. We find little to distinguish the actions at issue here from the actions at issue in *Thornton*. The Estate, however, argues that *Thornton* is inapplicable because quasi-judicial immunity does not apply to governmental entities. In support of this argument, the Estate cites federal cases addressing Section 1983 claims. Our Court, however, has applied quasi-judicial immunity to governmental entities in connection with other types of claims. In

*Mendenhall v. City of Indianapolis*, 717 N.E.2d 1218, 1227 (Ind. Ct. App. 1999), *trans. denied*, a property owner brought an inverse condemnation action against several governmental entities, including the Indianapolis Police Department ("IPD") after IPD executed a trial court's order to seize the property owner's bookstore. We held that IPD was entitled to quasi-judicial immunity because IPD's actions were in furtherance of the trial court's order. Accordingly, we held that the City of Indianapolis could "not be held liable for protected actions by IPD . . . ." *Mendenhall*, 717 N.E.2d at 1227.

[19]	Similarly, in *H.B.,* 713 N.E.2d at 302, children filed a complaint against the State of Indiana—Elkhart County Office Division of Family and Children ("DFC"). While the children were removed from their mother and her boyfriend and placed in foster care, DFC became aware that the boyfriend molested one of the children on a weekend visit. DFC did not report the abuse to law enforcement and later recommended to the trial court that the children be reunited with mother, who was still living with the boyfriend. The trial court took the recommendation and reunited the children with their mother, and the boyfriend later molested the children again. The complaint alleged that DFC was negligent in recommending that the children be reunited with their mother and by failing to report the first molestation to law enforcement.

[20]	We held that DFC was entitled to quasi-judicial immunity as follows:

> [T]he case workers employed by the DFC were acting to assist the juvenile court judge in his decisions regarding the care and custody of the Children. The DFC and its employees were acting

under the direction of Ind. Code § 31-6-11-11 (1988)[2], which states that case workers from the DFC "shall assist the juvenile court . . . during all stages of the proceedings in accordance with the purposes of [the chapter regarding reporting and investigation of child abuse and neglect]." Specifically, after the Children were adjudicated Children in Need of Services ("CHINS"), the case workers were required to complete a case plan for the Children, Ind. Code § 31-6-4-6.6 (1988)[3], and to prepare a predispositional report that included a recommendation for the care, treatment, and rehabilitation of the Children. Ind. Code § 31-6-4-15 (1988).[4] The case workers, in addition to acting under the statutes, were acting in accordance with the juvenile court's order to monitor the progress made by the Children, Mother and Boyfriend. Further, the DFC's recommendation to reunify the Children with Mother was made during a judicial proceeding. Thus, the case workers were acting as an arm of the juvenile court judge by implementing the court's order, and ultimately recommending that the Children be returned to Mother. We hold that . . . these were acts intimately associated with a judicial proceeding and entitled the DFC to absolute immunity from suit. Too, because the initial molestation took place after the Children were adjudicated CHINS and came under the supervision of the DFC, we hold that the failure of the DFC to report the 1989 molestation to law enforcement officials occurred in the course of the DFC's court-ordered duties[] and falls within the scope of the DFC's judicial immunity. Thus, the trial court did not err by entering summary judgment for the State on its claim for judicial immunity.

---

[2] Repealed by P.L. 1-1997, § 157.

[3] Repealed by P.L. 1-1997, § 157.

[4] Repealed by P.L. 1-1997, § 157.

*Id.* at 302-03 (footnotes omitted); *cf. D.L. v. Huck*, 978 N.E.2d 429, 433-34 (Ind. Ct. App. 2012) (distinguishing *H.B.* and holding that the Department of Child Services ("DCS") was not entitled to quasi-judicial immunity where DCS's removal of the child was not at the direction of a court and occurred after the CHINS proceedings had been closed), *aff'd on reh'g by* 978 N.E.2d 429 (Ind. Ct. App. 2012). Given our holdings in *Mendenhall* and *H.B.*, we disagree with the Estate's contention that quasi-judicial immunity does not apply to the Probation Department.

[21] Finally, we note that the trial court focused on what it described as genuine issues of material fact as to whether the probation officer intentionally withheld vital information. Quasi-judicial immunity, like judicial immunity, is "absolute." *Melton v. Ind. Athletic Trainers Bd.*, 156 N.E.3d 633, 652 (Ind. Ct. App. 2020)*, trans. denied*. "Such immunity totally insulates officials from liability for actions taken in their judicial or quasi-judicial capacity; the shield of absolute immunity cannot be pierced even if the official acts in error, maliciously, or corruptly." *Id.* at 655. Regardless of whether the probation officer's conduct was intentional or negligent, quasi-judicial immunity applies. Because the Probation Department has immunity from the Estate's claims, we need not address the parties' other arguments. Accordingly, we conclude that the trial court erred by denying the Probation Department's motion for summary judgment.

## Conclusion

The Probation Department is entitled to quasi-judicial immunity for the Estate's claims, and the trial court erred by denying the Probation Department's motion for summary judgment. Accordingly, we reverse and remand.

Reversed and remanded.

Bailey, J., and Kenworthy, J., concur.